1997-NMCA-077

943 P.2d 1036

**Daphne E. BARNAE, a/k/a Daphne Marchant–Schumacher, Petitioner–Appellee,**

v.

**Mary Elizabeth BARNAE, a/k/a Mary Elizabeth Marchant–Schumacher, a/k/a Mary Elizabeth Schumacher, Respondent–Appellant.**

**No. 17704.**

Court of Appeals of New Mexico.

May 5, 1997.

Certiorari Denied Aug. 6, 1997.

Ruth B. Cohen, Albuquerque, for Petitioner–Appellee.

Stevan Douglas Looney, Calvert, Crider & Bingham, P.C., Albuquerque, for Respondent–Appellant.

Kathryn D. Kendell, Shannon Minter, National Center For Lesbian Rights, San Francisco, CA, Renata M. Sos, Laura B. Gowen, Heller, Ehrman, White & McAuliffe, San Francisco, CA for Amicus Curiae.

## OPINION

PICKARD, Judge.

1. This matter comes before us on an interlocutory appeal to address whether the district court properly found that: (1) it had jurisdiction under the New Mexico Child Custody Jurisdiction Act, NMSA 1978, §§ 40–10–1 to –24 (Repl.Pamp.1994) (NMCCJA), and (2) it should exercise that jurisdiction despite an allegation of inconvenient forum. The parties lived together in California for ten years in a lesbian relationship, during which they both contributed to the upbringing of two children. Appellant is the children's biological mother (Biological Mother). After the relationship ended, Biological Mother came to New Mexico. Petitioner followed soon after, and filed an action, petitioning for custody. The district court held that it had jurisdiction under Sections 40–10–4(A)(2) and (4). We hold that the district court could properly find that it had jurisdiction under Section 40–10–4(A)(2) because of Biological Mother's and the children's significant contacts with New Mexico and because there was substantial evidence here regarding the care of the children. We also hold that the district court was not required to find that New Mexico was an inconvenient forum. We therefore affirm.

## BACKGROUND

2. Shortly after the birth of her first child in 1986, Biological Mother began a lesbian relationship with Petitioner. Biological Mother, Petitioner, and the child began living together in the same house. In 1991, Biological Mother conceived a second child through artificial insemination. Petitioner never legally adopted, or sought to adopt, the children. Nevertheless, all four lived together in the same house, excluding brief separations, until August of 1995, when Petitioner permanently left Biological Mother's household. During the time the parties lived together, Petitioner was the children's primary caretaker.

3. In 1992, the parties took part in a "commitment ceremony" in California. They dispute, however, whether they used the occasion to enter into a binding contract concerning their rights and duties regarding the children.

4. After Petitioner moved out, the children continued to live with Biological Mother. Mediation failed to help the parties reach an agreement concerning visitation of the children, and the parties' relationship deteriorated further. Biological Mother alleges that Petitioner began to appear at Biological Mother's home unannounced and uninvited, and that Petitioner engaged in "stalking-like behavior" in following the children to and from school.

5. Then, in January 1996, Biological Mother and the children came to New Mexico, apparently to obtain a reprieve from Petitioner. The parties dispute whether Biological Mother intended to return to California. She moved furnishings from her California household, such as a refrigerator, washer, dryer, and her bed. She had a garage sale and sold items she was not taking to New Mexico. Biological Mother informed a mutual friend that it was her intention to continue to live in New Mexico for a lengthy period of time. Once in New Mexico, Biological Mother stayed with a friend in Rio Rancho from late January 1996 to late February 1996. She rented an apartment in Rio Rancho on a month-to-month basis and enrolled her older child in school. According to Petitioner, Biological Mother told Petitioner that New Mexico was better for the children because they could play outside, they had neighbors, and the older child liked his school. Biological Mother kept her California driver's license and vehicle registration, as well as her California medical insurance and bank accounts.

6. On March 12, 1996, Petitioner served Biological Mother with a petition for custody and timesharing and with an ex parte restraining order (TRO). The TRO prevented Biological Mother from removing the children or causing them to be removed from Sandoval County. Biological Mother had been physically present in New Mexico for approximately a month and a half when she was served with the petition and TRO.

7. Biological Mother returned to California in early June 1996, where she stayed, in violation of the district court's order that allowed her to go to California for only three weeks. Biological Mother then initiated an action in a California court seeking a determination of parental relationship and child custody there.

8. After several hearings, which included a telephone discussion between the district court and the California court to determine whether New Mexico or California had jurisdiction, the district court ultimately found that New Mexico had subject matter jurisdiction. The district court considered the issue of jurisdiction on more than one occasion. In both his order of June 14, 1996, and, upon reconsideration, his order of August 16, 1996, the district judge found that New Mexico had jurisdiction and was not an inconvenient forum. The district court based its finding of jurisdiction on Biological Mother's having established residence in New Mexico and moving from California; on her enrolling her older child in school here; and on the fact that she did not leave New Mexico until Petitioner filed the petition for custody and timesharing, such that Biological Mother would still be here if not for the petition.

9. Though the district court's order did not explicitly say how the particular facts satisfied the particular sections of the NMCCJA, it appears that the court found these facts to satisfy Section 40–10–4(A)(2)(a) and (b) (significant connection and available evidence). It also found jurisdiction under Section 40–10–4(A)(4)(a) and (b) (no other state has jurisdiction and child's best interest) and that New Mexico was a convenient forum under Section 40–10–8(A). The court reasoned that it was not in the children's best interest to relinquish jurisdiction, based on California not having subject matter jurisdiction to hear Petitioner's claims, and because of the purposes of the NMCCJA.

10. The district court found that California apparently lacked jurisdiction because the California court, with whom he conferred, understood the case law there to grant no standing to lesbians who are not biological parents to claim parental rights. As a result,

the California court felt it would have no alternative but to dismiss the case. *See Nancy S. v. Michele G.*, 228 Cal.App.3d 831, 279 Cal.Rptr. 212, 215 n. 2 (1991) (lesbian who was not biological mother of child was not a parent within the meaning of California's Uniform Parentage Act and thus could not assert right to custody or visitation under the Act); *Curiale v. Reagan*, 222 Cal.App.3d 1597, 272 Cal.Rptr. 520, 522 (1990) (court had no "jurisdiction" where lesbian who was not biological parent had no standing to assert parental rights). New Mexico, however, has held that a person in a situation similar to Petitioner's made a colorable claim of standing to assert a legal right to some type of continuing relationship with a child. *See A.C. v. C.B.*, 113 N.M. 581, 586, 829 P.2d 660, 665 (Ct.App.) (non-biological parent figure who alleged coparenting agreement and agreement settling claims of timesharing and custody made prima facie case for relief), *cert. denied*, 113 N.M. 449, 827 P.2d 837 (1992). Because we determine that the district court could properly find jurisdiction in New Mexico under Section 40–10–4(A)(2), we do not address whether there was proper jurisdiction under Section 40–10–4(A)(4) of the NMCCJA.

*DISCUSSION*

*Standard of Review*

■ 11. On appeal we will not disturb the trial court's factual findings that are supported by substantial evidence. *See Strata Prod. Co. v. Mercury Exploration Co.*, 121 N.M. 622, 627, 916 P.2d 822, 827 (1996). We review the trial court's conclusions of law de novo. *See id.*

*Jurisdiction*

■ 12. We address three preliminary issues at the outset. First, we emphasize that the facts relevant to a determination of jurisdiction are those which existed at the time the petition was filed. *See In Interest of A.E.H.*, 161 Wis.2d 277, 468 N.W.2d 190, 200 (1991) (jurisdictional requirements of UCCJA must be met only at commencement of custody proceedings in state); *see also Simpkins v. Disney*, 416 Pa.Super. 243, 610 A.2d 1062, 1064 (1992) (determination of jurisdiction must be made at time of commence-

ment of instant proceeding); *State in Interest of D.S.K.*, 792 P.2d 118, 125 n. 6 (Utah.Ct. App.1990) (where mother removed herself and children from Utah before trial to modify custody decree, circumstances determining jurisdiction under child's "home state" were those at time petition to modify decree was filed). Biological Mother's choice to go to California and stay there in violation of the district court's order did not operate to divest the district court of jurisdiction it rightly had at the initiation of the action on March 7, 1996. Any other conclusion would conflict with the purposes of the NMCCJA. *See* Section 40–10–2(E) (purpose to deter unilateral removals of children undertaken to obtain custody awards).

■ 13. Second, compliance with any one of the four prerequisites of Section 40–10–4(A) satisfies the jurisdictional requirement. *Olsen v. Olsen*, 98 N.M. 644, 647, 651 P.2d 1288, 1291 (1982). Thus, if the facts of this case satisfy any of the four prerequisites, the district court properly had jurisdiction. The NMCCJA does not call for a balancing of contacts or evidence with jurisdiction going to the state with the greater volume of evidence or contacts. *Meier v. Davignon*, 105 N.M. 567, 570, 734 P.2d 807, 810 (Ct.App. 1987).

■ 14. Third, "[a] determination of jurisdiction under Section 40–10–4 involves a mixed question of law and fact, and an evidentiary record is necessary for a review of the factual claims in this appeal." *Id.* In this case, however, there was no evidentiary hearing and, importantly, no objection below that has been called to our attention on appeal to there being no evidentiary hearing. Rather, both parties appeared content to rely on the representations of their attorneys concerning what each side's respective evidence would show and on several affidavits that were filed in the record below. Under these circumstances, in which both parties permitted the court to make findings based on their respective showings, we decide the case the way it was postured below. *See Alvarez v. Chavez*, 118 N.M. 732, 741, 886 P.2d 461, 470 (Ct.App.1994); *Gonzales v. PERB*, 114 N.M. 420, 422, 839 P.2d 630, 632 (Ct.App.), *cert. denied*, 114 N.M. 227, 836 P.2d 1248 (1992).

15. For the following reasons, we conclude that the district court properly found jurisdiction under Section 40–10–4(A)(2), which states:

A. A district court of New Mexico which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial decree or modification decree of a prior decree of another court under the following circumstances if:

. . . .

(2) it is in the best interest of the child that a district court of New Mexico assume jurisdiction because:

(a) the child and his parents, or the child and at least one contestant, have a significant connection with New Mexico; and

(b) there is available in New Mexico substantial evidence concerning the child's present or future care, protection, training and personal relationships[.]

16. Under this statute, the district court could properly have found that it had subject matter jurisdiction at the relevant time, that is, when Petitioner filed her action. Here, significant connections existed between New Mexico, the children, and Biological Mother by virtue of her enrolling the older child in school in Rio Rancho. Furthermore, Biological Mother created a significant connection between herself and this state by moving from California together with her household furnishings and large appliances and establishing a residence here. *Cf. Meier*, 105 N.M. at 570, 734 P.2d at 810 (domicile within state does not require continuous physical presence, but physical presence in past and concurrent intention to make state one's home). Petitioner's affidavits below indicated that Biological Mother liked New Mexico and stated her intention to remain here, at least before the petition was filed and before Biological Mother found out that California law would be more favorable to her.

17. We recognize that other facts tend to show that Biological Mother intended to return to California as she so vigorously argues. These facts include her keeping her California driver's license, bank account, and insurance. Nevertheless, it is not the role of this Court to weigh conflicting evidence. *See Roybal v. Morris*, 100 N.M. 305, 311, 669 P.2d 1100, 1106 (Ct.App.1983). Since there was substantial evidence in the record upon which the district court could find significant connections between New Mexico, Biological Mother, and the children, we will not disturb its finding.

18. There was also substantial evidence in New Mexico regarding the interests of the children when Petitioner initiated this action. Both parties and both children were here. These people would have been well qualified to testify concerning the children's "present or future care, protection, training and personal relationships[.]" Section 40–10–4(A)(2)(b).

19. We hold therefore that, because there were significant connections between Biological Mother, the children, and New Mexico, and because there was substantial evidence here regarding the children's care, protection, training, and relationships at the time Petitioner filed her action for timesharing and custody, the district court could properly find that it had jurisdiction under Section 40–10–4(A)(2).

*Convenient Forum*

20. Biological Mother also argues that the district court should have declined jurisdiction on the ground that New Mexico was an inconvenient forum. The district court decided that it was a convenient forum based on the factors in Section 40–10–8. A district court's determination under this section is discretionary, and we will not reverse unless the decision is contrary to the reason, logic, evidence, and equities in the case. *Meier*, 105 N.M. at 570, 734 P.2d at 810.

21. Under the doctrine of forum non conveniens, which is analogous to the issue here, the party seeking a determination of forum non conveniens must establish two elements: " 'that (1) there is an adequate alternative forum, and (2) that considerations of convenience and judicial efficiency strongly favor litigating the claim in the second forum.' " *Marchman v. NCNB Tex. Nat'l Bank*, 120 N.M. 74, 85–86, 898 P.2d 709, 720–21 (1995) (quoting *Mercier v. Sheraton Int'l*,

*Inc.*, 935 F.2d 419, 423–24 (1st Cir.1991)). The doctrine of forum non conveniens does not apply unless an adequate alternative forum is available to the litigants. *Id.* at 89, 898 P.2d at 724. In *Marchman*, our Supreme Court said that if a statute of limitations barred the filing of some or all of the plaintiff's causes of action in the other forum, the other forum would not have been adequate. *Id.* Likewise here, the fact that California courts at the very least do not grant standing to persons in Petitioner's position means that the California courts are closed to her. During one of the hearings below, the following exchange took place between the district court judge and the California judge, who was present on the telephone:

New Mexico Judge: So that ... if I relinquish jurisdiction, if then [Biological Mother] went into your court and moved to dismiss this for lack of standing and lack of subject matter jurisdiction, you would have no choice but to dismiss?

California Judge: That's my understanding of what the California cases provide.... That's my understanding of what the case law is in California, and I would have no other alternative but to dismiss for lack of standing.

Even though the standard factors used to determine forum non conveniens (such as location of witnesses and the like) weigh in California's favor, that analysis is obviated by the fact that the California courts would dismiss this case if New Mexico were to relinquish jurisdiction. Thus, California is not an adequate forum, and the common law doctrine of forum non conveniens would not apply.

22. Section 40–10–8(E) also contemplates the availability of another adequate forum when the district court finds itself to be an inconvenient forum. This is evident in that provision's granting the district court discretion to "stay the proceedings upon condition that a custody proceeding be promptly commenced in another named state." *Id.* Here again, but for the fact that Petitioner's lack of standing to assert any parental rights in California foreclosed the possibility of another proceeding, the factors usually considered

for Section 40–10–8(E) purposes favor California. However, the lack of standing in California deprives the parties of an adequate alternative forum in which to resolve the custody dispute. *See Priscilla S. v. Albert B.*, 102 Misc.2d 650, 424 N.Y.S.2d 613 (Fam.Ct.1980). In *Priscilla S.*, Vermont was found to have had more complete and "closer connection" with the child and her family. Many witnesses who could provide evidence about the child's past and future care were also in Vermont. Nonetheless, because Vermont law would deny standing to the petitioner, who was the child's second cousin, Vermont was not an available alternate forum, and New York retained jurisdiction. *Id.* 424 N.Y.S.2d at 618–19. The facts of the instant case are analogous, and we similarly find that given the lack of an adequate forum in California, the district court did not err in retaining jurisdiction.

23. Moreover, the circumstances as they existed when Petitioner filed her action did not conflict with the factors under Section 40–10–8(C) in such a way that the district court had no choice but to find New Mexico inconvenient. We also note that the inconvenience existing in New Mexico arose directly from Biological Mother's decision to violate the district court's order by going to California and staying there. We therefore hold that the district court did not abuse its discretion in ruling that New Mexico was a convenient forum.

*Other Issues*

24. Both parties and amicus vigorously argue various issues regarding the merits of this case. Petitioner urges us to compare New Mexico public policy with California public policy in determining whether retaining jurisdiction is in the children's best interest. She argues that an important consideration in cases where an individual who is not a biological or adoptive parent claims custody or visitation is whether there is a psychological parent-child relationship. As a consequence, the argument goes, a child's best interest prevails over the right of a natural parent to custody, and New Mexico should retain jurisdiction because California will not allow Petitioner her day in court. Biological

Mother, on the other hand, directs us to the parental rights doctrine, which expresses a preference for the natural parent over the non-parent absent a showing that the natural parent is unfit. Lastly, amicus urges us to apply New Mexico's public policy, which holds the best interest of the child as paramount, and to retain jurisdiction because California's policy is to the contrary in its refusal to grant standing to a non-biological parent figure.

25. We decline to address whether New Mexico's or California's public policy better achieves the best interests of the children in this case. Deciding that issue is unnecessary to our determinations concerning jurisdiction and inconvenient forum, which are all that we are called upon to decide. We express no opinion regarding the merits of Petitioner's claims or of Biological Mother's defenses. These are matters for the district court in the first instance.

*CONCLUSION*

26. We hold that the district court properly found that it had jurisdiction to hear Petitioner's claim for timesharing and custody and that the court properly exercised its discretion in finding that New Mexico was a convenient forum. We therefore affirm.

27. **IT IS SO ORDERED.**

FLORES and BUSTAMANTE, JJ., concur.