2008-NMCA-128

193 P.3d 569

MALISSA C., Petitioner–Appellee,

v.

MATTHEW WAYNE H., Respondent–Appellant,

and

In the Matter of Malachi Xavier C., a child.

No. 26,943.

Court of Appeals of New Mexico.

July 9, 2008.

Shane A. English, Keithly & English, P.C., Anthony, NM, for Appellee.

Nancy L. Simmons, Law Offices of Nancy L. Simmons, P.C., Albuquerque, NM, for Appellant.

## OPINION

FRY, Judge.

{1} Respondent Matthew Wayne H. (Father) appeals from the district court's judgment (1) asserting exclusive jurisdiction to determine the custody of Child, who is the son of Father and Petitioner Malissa C. (Mother); (2) awarding sole legal and physical custody of Child to Mother; (3) enjoining Father from proceeding with a child custody proceeding in Texas; and (4) denying Father visitation with Child until Father dismisses the Texas proceeding with prejudice and voluntarily submits himself to the district court's jurisdiction. Our review in this case requires us to apply the provisions of the Uniform Child–Custody Jurisdiction and Enforcement Act (UCCJEA), NMSA 1978, §§ 40–10A–101 to –403 (2001). We affirm.

## BACKGROUND

{2} Mother and Father, who have never been married, are the biological parents of Child, who was born in December 2005, in Las Cruces, New Mexico. According to Mother's testimony, Child resided in New Mexico with Mother and her parents from his birth until March 31, 2006, when she and Child moved to Ft. Worth, Texas, to live with Father in an attempt to become a family unit. On April 6, Mother, who was in the Army Reserve, received a call from her superior officer telling her to report for training in El Paso. Mother told Father she planned to take Child with her when she left for training. When the time came for Mother to leave, she was under the impression that Father was going to take her to the airport, but instead, he drove off with Child and left Mother behind. Father took Child to Father's parents' home in Ft. Worth and refused to let Mother see Child. After unsuccessfully seeking assistance from the police and child protective services in Ft. Worth, Mother returned to New Mexico with her parents.

{3} On April 11, 2006, Father filed a petition to adjudicate parentage in Texas district court (Texas court), in which Father alleged that the purpose of the suit was "to establish the parent-child relationship between [Father] and [Child]" and that "[t]he best interest of [Child] will be served by the appointment of [Father] as joint managing conservator with the exclusive right to designate the primary residence of [Child]." The only statement in the petition regarding Child's residence was "County of residence: Tarrant[.]" On the same date that Father filed his petition, the Texas court issued a temporary restraining order (TRO) in which it directed the court clerk to issue notice to Mother to appear for a hearing on April 19, 2006. Mother did not receive notice of the April 19 hearing, and she was not served with the TRO until May 8, 2006.

{4} On April 13, 2006, Mother filed a petition in the New Mexico district court initiating the instant proceedings. In her petition, Mother alleged that she was unaware of and had not participated in any other custody proceeding involving Child. Mother further alleged that Child had resided in New Mexico from his birth until April 1, 2006, when she and Child had moved to Ft. Worth, and that soon afterward Father had abducted Child. Mother averred that the district court "[had] exclusive home state child custody jurisdiction" under the UCCJEA, and she sought both immediate temporary custody and permanent sole legal custody of Child. The district court entered an order stating that "it clearly appears that [the district] court has child custody jurisdiction" and

scheduling a hearing on temporary custody for May 8, 2006.

{5} On the date scheduled for the Texas court hearing, April 19, 2006, the Texas court extended the TRO "until such time as [Mother] has been served and a hearing has been had in this matter." On May 8, Father's counsel entered a special appearance in the New Mexico proceeding for the purpose of challenging the district court's jurisdiction. Mother was finally served with the pleadings in the Texas proceeding just prior to the hearing in New Mexico on May 8.

{6} At the May 8 hearing in the district court, Mother presented evidence that Child resided exclusively in New Mexico from his birth until April 1, 2006. Although Mother admitted to having an apartment in El Paso, Texas, for purposes of storing some of her possessions and in order to have a place to stay after working one of two jobs, she testified that Child never lived with her in that apartment. Child was at the apartment only occasionally, such as when Mother took him there when she met friends to go to the mall. When Mother was at work, Child stayed with Mother's parents at their home in New Mexico, which was where Mother spent most of her time. Mother testified that Child was on Medicaid in New Mexico, and there was evidence that Child's doctor was in New Mexico. Mother's mother, father, brother, and two friends all testified that Child never stayed overnight in the El Paso apartment and that he resided exclusively in New Mexico until March 31, 2006.

{7} Father also testified at the hearing and presented evidence supporting his belief that Child resided in El Paso prior to April 1, 2006. This evidence included his observation that Mother had many possessions at the El Paso apartment, including a baby's crib and toys, and information Mother posted on the internet stating that she lived in El Paso. Father's father testified that Mother wrote a letter to him and his wife in December 2005 that showed an El Paso return address.

{8} At the conclusion of the hearing, the district court stated that Section 40–10A–206 of the UCCJEA suggests that the Texas court would have prior jurisdiction over the custody proceeding only if the Texas court's jurisdiction was substantially in conformity with the UCCJEA. However, it appeared to the district court that there was no evidence presented that would support jurisdiction in the Texas court. Father's attorney responded that New Mexico was not Child's home state because Child's custodial parent, Mother, resided in Texas, and the residence of a child is the residence of his or her custodial parent.

{9} The district court disagreed and noted that the UCCJEA defines a home state as the home state of the child in question. The district court observed that all of the testimony based on personal knowledge was unrebutted that Child stayed in his grandparents' home in Berino, New Mexico. The district court then stated its finding that Child's home state was New Mexico and that Mother had significant connections to New Mexico. Regarding the proceedings pending in Texas, it appeared to the district court that the Texas pleadings did not identify Texas as Child's home state but stated only that the county of residence was Tarrant. Consequently, the district court was of the view that the Texas court did not have jurisdiction. The district court stated that it would send copies of the pleadings filed in the New Mexico proceeding to the Texas court. The district court stated that it was ordering that Child be returned to Mother forthwith.

{10} The day after the hearing, May 9, 2006, the district court filed a written order assuming jurisdiction, in which it expressly found that New Mexico was the home state of Child as defined by the UCCJEA, that the district court therefore had exclusive home state child custody jurisdiction, and that the Texas court did not have jurisdiction substantially in conformity with the UCCJEA. The order awarded temporary physical custody of Child to Mother.

{11} On the same day that the district court entered its order, the Texas court also filed an order. The Texas order granted an emergency stay of the enforcement of the district court's order. Specifically, the Texas order stayed enforcement of the New Mexico order's provisions requiring Father to turn over physical custody of Child to Mother.

{12} The following day, May 10, 2006, the district court sent a letter to the Texas judge advising that judge of the "simultaneous" proceedings in New Mexico, of the hearing that had taken place on May 8, and of the district court's determination that New Mexico was Child's home state. The letter then acknowledged receipt of the Texas order staying enforcement of the New Mexico order and the fact that Father had failed to turn over Child as required by the latter order. The letter asked the Texas judge to schedule an emergency hearing, and stated, "If after a hearing, your [c]ourt intends to assert or maintain continuing jurisdiction over [Child], please advise this [c]ourt and the parties as soon as possible so that we may communicate towards a resolution of the jurisdictional matter."

{13} The Texas court then entered its own order assuming jurisdiction over the custody matter, in which the court recited that it had conducted its own hearing on May 10 and 11. The Texas court found that Texas was Child's home state. The order went on to note that the Texas court had allowed Mother to have temporary "possession" of Child on May 11 and 12, and that Mother failed to return Child to Father as ordered. The order then appointed Father and Mother as joint managing conservators of Child, provided that Mother would have restricted access to Child only under Father's supervision, and ordered Mother to surrender Child to Father on May 16 at a specified time and place.

{14} The district court then notified the parties that a trial on the merits would take place on June 14, 2006. New counsel for Father entered a special appearance for the purpose of challenging the district court's jurisdiction. Father then filed a motion in the district court seeking an order declining jurisdiction on the basis of Mother's alleged misconduct in refusing to return Child to Father as required by the Texas court's order. The district court scheduled a hearing on Father's motion to deny jurisdiction to take place immediately prior to trial on the merits on June 14.

{15} On June 14, the district court first heard Father's motion asking the district court to decline jurisdiction based on Mother's misconduct. The district court stated that it had already determined that it had jurisdiction and it failed to see how it could now deny jurisdiction. When Father pointed out that Mother failed to comply with the Texas court's May 11 order requiring Mother to return Child to Father after an overnight visit, the district court responded that Father was already in contempt of the district court's May 8 order requiring Father to relinquish custody of Child to Mother. After considering further argument, the district court concluded that the Texas pleadings were void ab initio because the original petition filed in Texas failed to make reference to the UCCJEA. Consequently, even though the Texas petition was filed first, the New Mexico district court pleadings were served first, and the New Mexico district court held the first evidentiary hearing and made the first jurisdictional finding. Holding that the Texas court was bound by the district court's determination of jurisdiction, the district court denied Father's challenge and ordered that the Texas court's orders were unenforceable.

{16} At this point, Father's counsel stated that he was not prepared to proceed further and asked the district court's permission to leave the courtroom, lest he waive Father's challenge to the district court's jurisdiction. The district court responded that Father's attorney could leave and that Father could stay and participate, or he could leave. Father elected not to participate.

{17} After briefly considering the argument of Mother's counsel, the district court stated that it had sufficient evidence from the prior hearing on which to rule. The district court awarded custody of Child to Mother and stated that Father would not be allowed visitation until he had dismissed the Texas proceedings, at which time Father would be allowed only supervised visitation. After Father had demonstrated his willingness to comply with the district court's orders, Father could ask the district court to revise visitation. The district court later filed a final judgment that included findings of fact and conclusions of law. Father appealed.

## DISCUSSION

{18} Father makes three arguments on appeal. First, he contends the district court did not have jurisdiction to make a custody determination. As an extension of this argument, Father's second contention is that the district court did not have the authority to declare the Texas court's future orders to be void. Third, even if the district court did have jurisdiction, it erred in ordering that Father could not visit Child until he complied with certain prerequisites.

### 1. The District Court Had Child–Custody Jurisdiction Under the UCCJEA

{19} The gist of Father's argument is that the Texas court made the first determination of child custody when it entered the TRO, which meant that at the time Mother initiated the New Mexico proceeding two days later, there was a pending child-custody proceeding in Texas. Thus, according to the UCCJEA, Father contends, the district court had no jurisdiction to proceed. Even if this were not enough, the Texas court's subsequent finding that Texas was Child's home state was conclusive, according to Father, and the district court had no business looking behind the Texas court's finding.

{20} In reviewing the district court's determination of jurisdiction, we will not disturb factual findings that are supported by substantial evidence, and we review conclusions of law de novo. *Barnae v. Barnae*, 1997–NMCA–077, ¶ 11, 123 N.M. 583, 943 P.2d 1036. We employ de novo review in interpreting the UCCJEA. *State ex rel. Children, Youth & Families Dep't v. Donna J.*, 2006–NMCA–023, ¶ 11, 139 N.M. 131, 129 P.3d 167.

{21} We turn first to the provisions of the UCCJEA, which was enacted to harmonize the provisions of the UCCJEA's predecessor, the Uniform Child–Custody Jurisdiction Act (UCCJA), NMSA 1978, §§ 40–10–1 to –24 (1981, repealed 2001) (current version at §§ 40–10A–101 to –403), and the federal Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A (2000). *See* Patricia M. Hoff, *The ABC's of the UCCJEA: Interstate Child–Custody Practice Under the New Act*, 32 Fam. L.Q. 267, 268 (1998) (hereinafter "Hoff").

{22} The UCCJEA addresses the problem raised by the present case, which is what happens when there are simultaneous child-custody proceedings in two different states. Subsection 206(a) of the UCCJEA provides:

(a) Except as otherwise provided in Section 204 [having to do with temporary emergency jurisdiction], a court of this state may not exercise its jurisdiction under Article 2 ... of the [UCCJEA] if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state *having jurisdiction substantially in conformity with the [UCCJEA]*, unless the proceeding has been terminated or is stayed by the court of the other state because a court of this state is a more convenient forum under Section 207.

(Emphasis added.) At the time Mother filed her child-custody petition in the district court on April 13, 2006, Father had already initiated a child-custody proceeding in Texas. Thus, in order to determine whether the district court could exercise child-custody jurisdiction, we must consider whether the Texas court had "jurisdiction substantially in conformity with" the UCCJEA. The district court determined that Texas did not have such jurisdiction when it concluded that New Mexico was Child's "home state."

{23} Texas has also adopted the UCCJEA, and the Texas statute is largely identical to New Mexico's UCCJEA. *Compare* §§ 40–10A–101 to –403, *with* Tex. Family Code. Ann. §§ 152.001 to .317 (Vernon 2002). We analyze the New Mexico UCCJEA, which was the statutory scheme applied by the district court in this case.

{24} The focus of our analysis is Section 40–10A–201(a), which provides:

(a) Except as otherwise provided in Section 204 ..., a court of this state has jurisdiction to make an initial child-custody determination only if:

(1) this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of

the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(2) a court of another state does not have jurisdiction under paragraph (1) or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section[s] 207 or 208 . . . and:

(A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(B) substantial evidence is available in this state concerning the child's care, protection, training and personal relationships;

(3) all courts having jurisdiction under paragraph[s] (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section[s] 207 or 208 . . .; or

(4) no court of any other state would have jurisdiction under the criteria specified in paragraph[s] (1), (2) or (3).

{25} Section 40–10A–201(a) of the UCCJEA may be distilled into one primary proposition, which is that a court in a child's home state has jurisdiction to make an initial child-custody determination unless it declines to exercise that jurisdiction on the ground that another state is a more appropriate forum. *See* Uniform Child–Custody Jurisdiction and Enforcement Act § 201, 9 U.L.A. 672, cmt. 1 (1999) ("The jurisdiction of the home [s]tate has been prioritized over other jurisdictional bases."); Hoff, *supra*, at 268 (noting that the UCCJEA gives "home state" jurisdiction priority); David Carl Minneman, Annotation, *Construction and Operation of Uniform Child[-]Custody Jurisdiction and Enforcement Act*, 100 A.L.R. 5th 1, § 2[b] (2002) (explaining that the UCCJEA "has prioritized home state jurisdiction" (footnote omitted)).

{26} Section 40–10A–102(7) of the UCCJEA defines "home state" for a child of less than six months of age (Child was four months old when Mother initiated the New Mexico proceeding) as "the state in which the child lived from birth with [a parent or a person acting as a parent]." In addition, "[a] period of temporary absence of any of the mentioned persons is part of the period[.]" *Id.*

{27} Our review of the record establishes that substantial evidence supports the district court's determination that New Mexico was Child's home state at the time Mother initiated the district court proceeding. Mother, her parents, her brother, and her friend all testified that Child lived exclusively in New Mexico from his birth until his departure to Texas on April 1, 2006. These witnesses explained that Child visited Mother's El Paso apartment occasionally when Mother met friends there before going to the mall, but that Child never spent the night in the apartment. During this time, Child lived with Mother at Mother's parents' home in New Mexico, or, when Mother spent the night in El Paso on occasion, Child stayed with Mother's parents in New Mexico. In addition, Child was on New Mexico Medicaid and his doctor was in New Mexico.

{28} The district court's determination that the Texas court did not have jurisdiction is supported by the same evidence. If Child lived exclusively in New Mexico from birth, except for his temporary absence from April 1 to the date Mother filed her petition on April 13, then Texas could not be Child's home state under the UCCJEA. Because Texas was not Child's home state, the Texas court could not have "jurisdiction substantially in conformity with" the UCCJEA. § 40–10A–206(a).

{29} Father contends that our focus should not be the district court's May 9 determination that New Mexico was Child's home state, but rather that the controlling determination was the Texas court's finding on May 12 that Texas was Child's home state. Because the Texas court's finding emanated from the earliest-filed child-custody pleading, Father argues, the Texas court's finding was valid on its face, and the district court could

not look behind the finding to determine its validity.

{30} We disagree. The UCCJEA by its express terms requires a court faced with a child-custody proceeding pending in another state to determine whether the court in the other state has "jurisdiction substantially in conformity" with the UCCJEA, *id.*, by "examin[ing] the court documents and other information supplied by the parties" to the court in the other state. § 40–10A–206(b). In addition, our jurisprudence analyzing the UCCJEA's predecessor, the UCCJA, supports the view that another state court's putative child-custody jurisdiction should be critically assessed by a New Mexico court in the event of simultaneous proceedings.

{31} The UCCJA contained a provision similar to the UCCJEA's Subsection 206(a), which provided that a New Mexico court should not exercise jurisdiction "if at the time of filing the petition a proceeding concerning the custody of the same child was pending in a court of another state exercising jurisdiction substantially in conformity with the [UCCJA]." § 40–10–7(A). Our cases interpreting the UCCJA made it clear that this provision of the statute required a critical consideration of the other state court's jurisdiction. *See, e.g., Olsen v. Olsen,* 98 N.M. 644, 647, 651 P.2d 1288, 1291 (1982) (making an independent assessment of whether Wyoming had jurisdiction under the UCCJA); *Escobar v. Reisinger,* 2003–NMCA–047, ¶¶ 14–16, 133 N.M. 487, 64 P.3d 514 (concluding that Missouri court was exercising jurisdiction substantially in compliance with UCCJA); *Elder v. Park,* 104 N.M. 163, 166, 169, 717 P.2d 1132, 1135, 1138 (Ct.App. 1986) (explaining that a court should not exercise jurisdiction if a court in another state is exercising jurisdiction consistently with the UCCJA and the PKPA and concluding that New Mexico should not engage in a custody determination because New Hampshire was the child's home state).

{32} Furthermore, cases from other jurisdictions that have applied the UCCJEA have held that a court confronted with a child-custody proceeding in a court of another state must determine whether the court in which the first pleading was filed had juris-

diction substantially in conformity with the UCCJEA. For example, in *In re Marriage of Sareen,* 153 Cal.App.4th 371, 62 Cal. Rptr.3d 687 (Ct.App.2007), the mother filed a petition for child custody in California at a time when a custody proceeding was pending in India. *Id.* at 691–92. The California trial court concluded that India was the child's home state and thus that the California court did not have jurisdiction under the UCCJEA. *Id.* at 692–93. On appeal, the California Court of Appeal, noting that the UCCJEA treats foreign countries as states under most circumstances, first considered whether the pendency of proceedings in India precluded the California court from exercising jurisdiction. *Id.* at 691. In making this determination the question was whether the court in India had jurisdiction "substantially in conformity with [the UCCJEA]." *Id.* at 692 (alteration in original) (internal quotation marks and citation omitted). Because the father filed his petition in India only nine days after the family arrived in India, the India court's jurisdiction was not in conformity with the UCCJEA. *Id.* at 691–92; *see Welch–Doden v. Roberts,* 202 Ariz. 201, 42 P.3d 1166, 1168, 1176 (Ct.App.2002) (concluding that the Arizona court, where first custody proceeding was filed, did not have jurisdiction substantially in conformity with the UCCJEA because Arizona was not the child's home state and must defer to the court in Oklahoma, which was the child's home state).

{33} Father apparently concedes that it would have been appropriate for the district court to consider whether the Texas court *appeared* to be exercising jurisdiction substantially in conformity with the UCCJEA; however, Father contends that the district court exceeded its authority by questioning "whether the Texas court absolutely and correctly decided its own jurisdiction." We do not agree with Father that the district court did anything beyond considering whether the Texas court appeared to have jurisdiction.

{34} The district court first became aware of the Texas court's involvement on May 8, 2006, immediately before the district court was to begin an evidentiary hearing on Mother's petition. At that time, the only action

taken by the Texas court was the issuance of a TRO, which recited none of the information required by the UCCJEA as necessary for the exercise of child-custody jurisdiction. Neither the petition filed by Father in Texas, including the petition's supporting affidavit, nor the TRO itself stated where or with whom Child had resided since birth. *See* § 40–10A–209(a) (stating that in the first pleading filed in a child-custody proceeding each party "shall give information, if reasonably ascertainable, under oath as to the child's present address or whereabouts, the places where the child has lived during the last five years and the names and present addresses of the persons with whom the child has lived during that period"). Such details are necessary for a determination of which state was Child's home state at the time. *See* § 40–10A–102(7) (defining "home state" as "the state in which a child lived with a parent or a person acting as a parent" from birth, if the child is less than six months old (internal quotation marks omitted)). Indeed, the only information about Child set out in the Texas petition's supporting affidavit was that Father was the biological parent of Child, that Mother had been staying with Father in Texas "for approximately one week," and that Mother left Child with Father "but has threatened that she will return and take him to [an] undisclosed location." If anything, this information suggested that Texas was *not* Child's home state because it specifically mentioned only a one-week stay by Mother and, implicitly, Child.

{35} Confronted with the Texas TRO, which was facially deficient under the UCCJEA, the district court properly concluded that it had "jurisdiction to make an initial child-custody determination," § 40–10A–201(a), for two reasons. First, the TRO did not show that the Texas court had "jurisdiction substantially in conformity with the [UCCJEA]," § 40–10A–206(a), and second, the evidence presented to the district court established that New Mexico was Child's home state.

{36} Father maintains that the district court improperly "set up a straw man to strike down the Texas court's finding, by holding its own competing evidentiary hear-

ing and finding that the Texas court's finding [that Texas was Child's home state] *must have been* incorrect." Father is mistaken about the chronology of events. At the time the district court conducted the evidentiary hearing and determined that New Mexico was Child's home state, the Texas court had not yet held an evidentiary hearing, and the only pleadings filed in the Texas court—Father's petition, the TRO, and an order extending the TRO until Mother could be served—did not recite any facts suggesting that the Texas court had jurisdiction under the UCCJEA. Had the Texas court entered an order finding Texas to be Child's home state *before* the district court acted, the UCCJEA might have required the district court to defer to the Texas court's order and stay its proceeding. § 40–10A–206(b). However, that is not the situation before us.

{37} We conclude that the district court properly considered the pleadings filed in the Texas court before it conducted its own evidentiary hearing, and that it also properly determined that there was nothing in the Texas pleadings indicating that the Texas court was exercising jurisdiction substantially in conformity with the UCCJEA. The district court therefore had jurisdiction to conduct the evidentiary hearing, and substantial evidence supported its finding that New Mexico was Child's home state at the time the proceedings commenced. Pursuant to the UCCJEA, the district court's judgment is binding on Father because he was served with process and was given an opportunity to be heard. *See* § 40–10A–106 (stating that "[a] child-custody determination made by a court of this state that had jurisdiction under the [UCCJEA] binds all persons who have been served in accordance with the laws of this state . . . and who have been given an opportunity to be heard").

**2. The District Court Properly Determined That the Texas Court's Orders Were Invalid**

{38} Father argues that the district court had no authority to rule that future orders entered by the Texas court were void and unenforceable. He maintains that when inconsistent judgments are filed in different

states, the last judgment entered is controlling. Thus, according to Father, because "the Texas judgment was final as of May 23, 2007, Father is entitled to register the judgment and have it enforced in New Mexico." We disagree. According to the UCCJEA, the district court has continuing, exclusive jurisdiction over the determination of Child's custody until it makes certain findings that are not presently relevant. *See* § 40–10A–202. Under these circumstances, it was reasonable for the district court to conclude that any custody orders from any other state are invalid.

### 3. Father Did Not Preserve His Argument Challenging the District Court's Order Denying Him Visitation

{39} Father argues that the district court violated his fundamental constitutional right to a relationship with Child, or in the alternative, abused its discretion when it ordered that Father could not have visitation with Child "until (1) such time as the Texas custody proceeding is dismissed with prejudice and all then existing custody orders issued by the Texas court are withdrawn and cancelled, and (2) [Father] voluntarily submits himself to [the district] court's jurisdiction and petitions this [c]ourt for appropriate visitation."

{40} Mother responds that Father failed to preserve this argument. We agree. After the district court filed its final judgment on June 27, 2006, Father did not file a motion alerting the district court to the alleged error regarding the denial of visitation. In order to preserve the matter for our review, "it must appear that a ruling or decision by the district court was fairly invoked" such that the district court is given the opportunity to correct its mistake and the opposing party has a chance to respond to the argument. *Harbison v. Johnston*, 2001–NMCA–051, ¶ 7, 130 N.M. 595, 28 P.3d 1136 (internal quotation marks and citation omitted). Father did nothing of this nature and instead proceeded to file this appeal.

{41} Moreover, even if Father had preserved the issue, we cannot say that the district court abused its discretion. District courts have "wide discretion in awarding either custody or visitation based on the best interests of the [child]." *Rhinehart v. Nowlin*, 111 N.M. 319, 324, 805 P.2d 88, 93 (Ct. App.1990). The district court stated that "[i]t is in the best interest of [Child] that [Mother] be awarded sole legal and physical custody of [Child] and that [Father] not be permitted to exercise any visitation" until the stated prerequisites had been met. The district court elaborated on its rationale by noting that Father had "previously violated [the district] court's temporary custody order by retaining [Child] in Texas after being directed by [the district] court to release [Child] into [Mother's] custody.... The [district c]ourt finds that such conduct is likely to be repeated by [Father.]" Although we can conceive of alternative arrangements, such as supervised visitation, that might have protected Child from the abduction the district court apparently wished to avert, we cannot say that the district court's arrangement was clearly unreasonable or untenable. *See Collado v. City of Albuquerque*, 2002–NMCA–048, ¶ 21, 132 N.M. 133, 45 P.3d 73 ("We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." (internal quotation marks and citation omitted)).

## CONCLUSION

{42} For the foregoing reasons, we affirm the district court's judgment.

{43} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN, Chief Judge and MICHAEL E. VIGIL, Judge.