# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date:  **APRIL 19, 2017**

**Nos. 34,610 & 35,853 (Consolidated)**

**CARRIE J. TOMLINSON,**

     Petitioner-Appellant,

v.

**DANA M. WEATHERFORD,**

     Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF GRANT COUNTY**
**Henry R. Quintero, District Judge**

Caren I. Friedman
Santa Fe, NM

New Mexico Legal Group, P.C.
Jessica C. Roth
Albuquerque, NM

for Appellant

Lopez, Dietzel, Perkins, & Wallace, P.C.
Cathryn L. Wallace
Silver City, NM

for Appellee

**OPINION**

**ZAMORA, Judge.**

{1}   In this domestic relations case, the level of animosity between the parties, their deliberate actions and inactions, and the delays in the judicial system have complicated the situation to the point that the Child (R.W.) has been lost in the process. Petitioner Carrie Tomlinson (Petitioner) appeals the district court's decision to decline jurisdiction over her action to determine parentage, child custody, and timesharing with regard to a child born to her former partner, Dana Weatherford (Respondent). Petitioner argues that the district court applied the incorrect standard in determining jurisdiction and challenges several of the district court's findings. Petitioner also argues that the district court violated her right to due process by failing to address her requests for interim visitation and that the district court's ruling violated her right to equal protection.

{2}   While this appeal was pending, Petitioner filed a motion for review of the district court's action on an application for stay and for injunction pending appeal as well as a petition for writ of error, or in the alternative, motion for review. Petitioner requested this Court to review the district court's order denying her motion to stay the enforcement of its judgment pending appeal and order visitation and communication between herself and R.W. She also requested the appointment of a guardian ad litem.

On September 9, 2015, this Court issued an order directing the district court to hold a hearing on Petitioner's motion and the issue of whether to order visitation and communication between Petitioner and R.W. within twenty-one days of the order. Alternatively, if the district court decided to appoint a guardian ad litem (GAL), the district court was required to determine an expedited time frame for the GAL to complete his or her work and then hold a hearing to address the visitation and communication issues. It was not until December 3, 2015, that the district court held the hearing to appoint the GAL. He identified and appointed the GAL without input from the parties. Petitioner alleges that the GAL relied on a "sham" bonding study when making the recommendation with respect to her request for visitation and communication with R.W. According to Petitioner, the district court accepted the GAL's recommendation, even though the study considered only the degree of bonding between Respondent and R.W., and Petitioner was not given the opportunity to examine the GAL about her recommendations or any bias she might have. For the reasons that follow, we reverse and remand for further proceedings.

**BACKGROUND**

{3}     Petitioner and Respondent were in a domestic relationship and decided to have and raise a child together. Respondent was artificially inseminated by an anonymous donor and gave birth to R.W., in Oklahoma in April 2007. In June 2007 an Oklahoma

district court appointed Petitioner and Respondent co-guardians of R.W., pursuant to their joint request. In September 2008, the couple and R.W. moved from Oklahoma to New Mexico. From the time of R.W.'s birth until May 2009, she lived with Petitioner and Respondent. In 2009 Petitioner left the home but continued to share parenting responsibilities with Respondent until September 2012, when Respondent cut off contact between R.W. and Petitioner.

{4}     Subsequently, Respondent sought an order of protection from domestic violence based on alleged harassment by Petitioner. The district court determined that no domestic violence had occurred. However, the parties stipulated to mutual restraint. On May 20, 2013, Petitioner initiated this action to establish parentage and determine custody and timesharing with regard to R.W.

{5}     Shortly after the petition was filed, Respondent left the state with R.W. Respondent could not be located and was not served with process before she left the state. By July 2013 Respondent established residency in Oklahoma. In August 2013 Respondent filed an objection to the district court's jurisdiction over the case.

{6}     In December 2013 the district court held a hearing on the issue of jurisdiction. During that hearing, Respondent informed the district court that a hearing was scheduled the same month in Oklahoma pertaining to the order granting co-guardianship that was entered in Oklahoma in 2007.

3

{7}     Apparently, Respondent had filed a change of venue in the guardianship case. Both Petitioner and the district court were under the impression that Respondent intended to have the guardianship revoked. The district court conferred with the Oklahoma court, then stayed proceedings in the present case, pending a final decision in the Oklahoma guardianship. However, after the stay in this case was issued, Respondent did not pursue revocation of the guardianship in Oklahoma. Approximately eleven months after the stay in this case was issued, the Oklahoma court terminated the guardianship over Petitioner's objection.

{8}     After the termination of the guardianship, Petitioner again moved to determine parentage and timesharing in this case. Respondent once again objected to the district court's jurisdiction, arguing that New Mexico was an inconvenient forum and that it would not be in the best interests of R.W. for the district court to exercise its jurisdiction over Petitioner's claim. The district court determined that it was in the best interests of R.W. that "any disputes be brought and heard in Oklahoma."

**DISCUSSION**

{9}     On appeal, Petitioner argues that (1) New Mexico has jurisdiction over the action pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (the Act), NMSA 1978, §§ 40-10A-101 to -403 (2001); (2) the district court erred in making findings on the merits of her parentage and child custody claim because the

4

sole issue before the court was subject matter jurisdiction; (3) the district court denied her the opportunity to maintain her relationship with R.W. and violated due process by failing to address her repeated requests for interim visitation; and (4) the district court's rulings violated equal protection. We will address these arguments in turn. We first consider the question of jurisdiction under the Act.

**The District Court Has Jurisdiction Under the Act**

{10}  In analyzing Petitioner's argument, it is helpful to examine the historical background of the Act. In New Mexico jurisdiction over child custody disputes is governed by the Act. Prior to the enactment of the Act in 2001, child custody disputes were governed by the Child Custody Jurisdiction Act (CCJA), NMSA 1978, §§ 40-10-1 to -24 (1981, as amended through 1989) (repealed 2001).

{11}  The CCJA provided four independent bases for jurisdiction. New Mexico had jurisdiction if: (1) it was the child's home state—the state where the child had lived during the six months immediately preceding the commencement of the custody proceedings; (2) assuming jurisdiction would be in the child's best interests because the child and at least one parent had significant connections with New Mexico; (3) emergency circumstances required the exercise of jurisdiction to protect the child; or (4) there was no home state or another state that had declined jurisdiction. *See* § 40-10-4(A).

{12} These four bases of jurisdiction were not given any order of priority. As a result, it was possible for states to have concurrent jurisdiction, which in some cases resulted in simultaneous child custody proceedings in different states. *See* Unif. Child Custody Jurisdiction Act § 6 cmt. (Am. Law Inst. & Unif. Law Comm'n 1968); Unif. Child Custody Jurisdiction & Enf't Act (UCCJEA) § 206 cmt. (Am. Law Inst. & Unif. Law Comm'n 1997). There was also confusion concerning the "best interests" language of the CCJA. *See* UCCJEA § 201 cmt. 2. The phrase "tended to create confusion between the jurisdictional issue and the substantive custody determination." *Id.*

{13} In order to clarify the jurisdictional standards in child custody matters and to harmonize the CCJA with the federal Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A (2006), which prioritizes home state jurisdiction, Congress enacted the Act. *See* UCCJEA References & Annot. (prefatory note). The Act eliminates the "best interests" language, because it tended to be confusing and because it is not necessary for the jurisdictional issue. *See* UCCJEA § 201 cmt. The Act also prioritizes home state jurisdiction, which has largely resolved the problem of simultaneous proceedings. UCCJEA § 206 cmt.

{14} Under the Act, the child's home state is prioritized such that a court in the home state has exclusive "jurisdiction to make an initial child[]custody determination

6

unless it declines to exercise that jurisdiction on the ground that another state is a more appropriate forum." *Malissa C. v. Matthew Wayne H.*, 2008-NMCA-128, ¶ 25, 145 N.M. 22, 193 P.3d 569; *see* § 40-10A-201(a). In other words, where there is a home state, "there can be no exercise of significant connection jurisdiction in an initial child custody determination and, therefore, no simultaneous proceedings." UCCJEA § 206 cmt.

{15}     In the present case, Petitioner argues that the district court erred in declining jurisdiction over the child custody dispute because New Mexico was the home state when the petition was filed and because the district court did not consider the required factors in determining whether it could decline jurisdiction under the Act. *See* § 40-10A-207(b). When reviewing a district court's jurisdictional determination, we review the factual findings for sufficiency of the evidence. *See Malissa C.*, 2008-NMCA-128, ¶ 20. We review de novo the district court's application of the law to the facts so found. *See State ex rel. Children, Youth & Families Dep't v. Donna J.*, 2006-NMCA-023, ¶ 11, 139 N.M. 131, 129 P.3d 167.

{16}     As noted, because the Act prioritizes home state jurisdiction in child custody disputes, the first step in resolving the jurisdictional question is to identify the child's home state. The Act, like the CCJA, defines the "home state" as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive

7

months immediately before the commencement of a child custody proceeding." Section 40-10A-102(7). The parties in this case do not dispute that R.W. and Respondent lived in New Mexico from September 2008 until after the petition was filed on May 20, 2013. Therefore, at the time the petition was filed, New Mexico was R.W.'s home state, and the district court had jurisdiction to make the initial child custody determination.

{17} Respondent argues that the district court could properly decline jurisdiction based on the 2007 guardianship proceeding in Oklahoma, which Respondent characterizes as a "simultaneous proceeding" for jurisdictional purposes. We are not persuaded. First, we note that the Oklahoma guardianship proceedings commenced in May 2007 when Petitioner and Respondent filed a joint petition for co-guardianship of R.W. In June 2007 after a hearing on the parties' joint petition, the Oklahoma district court entered an order appointing them as co-guardians of R.W. There appear to have been no unresolved issues before the Oklahoma court, and there was no further activity in that case prior to the commencement of the proceedings in this case in 2013. Thus, it appears that the Oklahoma guardianship was not pending when the petition was filed in this case. Respondent does not identify anything in the record showing otherwise.

**{18}** Second, even if the guardianship in Oklahoma was ongoing, New Mexico was R.W.'s home state and New Mexico had priority jurisdiction under the Act. *See Garcia v. Gutierrez*, 2009-NMSC-044, ¶ 13, 147 N.M. 105, 217 P.3d 591 ("If one state can be established as the home state, and a child custody action is filed first in that state, any other states which have passed a similar statute must stay their proceedings, or decline to exercise jurisdiction." (internal quotation marks omitted)); *see also* UCCJEA § 206 cmt. ("Under this Act, the simultaneous proceedings problem will arise only when there is no home [s]tate[.]"); § 40-10A-206 (regarding simultaneous proceedings).

**{19}** We disagree with Respondent's suggestion that Oklahoma should be considered R.W.'s home state because the Oklahoma guardianship commenced in 2007, prior to the commencement of these proceedings, and because Respondent had returned to Oklahoma with R.W. prior to the hearing on jurisdiction in this case. The facts relevant to jurisdiction under the Act are those that existed at the time the petition was filed. *See* § 40-10A-201(a)(1). Those facts established that New Mexico was R.W.'s home state, conferring jurisdiction to make the initial determination upon the district court. *See* §§ 40-10A-201, -207, -208; *Malissa C.*, 2008-NMCA-128, ¶ 25. Declining jurisdiction would only have been appropriate here if, under the specific provisions of the Act, the district court determined that another state was a more

appropriate forum. *See* §§ 40-10A-201(a), -207, -208(a)(2); *Malissa C.*, 2008-NMCA-128, ¶ 25.

{20} The Act provides that a court of this state that has jurisdiction to make a child custody determination may decline to exercise its jurisdiction "if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." Section 40-10A-207(a). The court must consider whether it is an inconvenient forum and whether it is appropriate for a court of another state to exercise jurisdiction. *See* § 40-10A-207(b).

{21} Before determining whether New Mexico is an inconvenient forum, the district court is required to consider all relevant factors including:

> (1) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;
>
> (2) the length of time the child's home state is or recently was another state;
>
> (3) the distance between the court in this state and the court in the state that would assume jurisdiction;
>
> (4) the relative financial circumstances of the parties with respect to travel arrangements;
>
> (5) any agreement of the parties as to which state should assume jurisdiction;

    (6) the nature and location of the evidence required to resolve the pending custody litigation, including testimony of the child;

    (7) the ability of the court of each state to decide the custody issue expeditiously and the procedures necessary to present the evidence; and

    (8) whether another state has a closer connection with the child or with the child and one or more of the parties, including whether the court of the other state is more familiar with the facts and issues in the pending litigation.

*Id.*

{22} Under Section 40-10A-208(a), the district court may decline to exercise jurisdiction if "a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct." Unjustifiable conduct such as "parents, or their surrogates, acting in a reprehensible manner, such as removing, secreting, retaining, or restraining the child." UCCJEA § 208 cmt. This section of the Act "ensures that abducting parents will not receive an advantage for their unjustifiable conduct." *Id.*

{23} We conclude that the district court erred in finding that it was in the "best interests" of R.W. that "any disputes be brought and heard in Oklahoma." Because the district court had home state jurisdiction, it was error to defer to another state court that did not have jurisdiction substantially in conformity with the Act without setting out findings that show the basis on which the district court concluded that it

11

is an inconvenient forum and that the court of the other state is a more appropriate forum.

{24} Even in circumstances where a court justifiably declines jurisdiction, under the Act, that court is nevertheless required to "stay the case and direct the parties to file in the [s]tate that has been found to be the more convenient forum[,]" which the district court in this case did not do. UCCJEA § 207 cmt.; *see* § 40-10A-207(c). The court should not simply dismiss the action, leaving the case in limbo as the district court did in this case, by not following through with a determination that a court of another state is the more appropriate forum. *See* § 40-10A-207(C); UCCJEA § 207 cmt.

{25} The legal basis for the district court's decision is not clear. Its order cites neither Sections 40-10A-207 nor 208. Indeed the order includes no conclusions of law but only findings of fact, which appear to be based largely on *Barnae v. Barnae*, 1997-NMCA-077, 123 N.M. 583, 943 P.2d 1036. While *Barnae* is factually similar to the present case, the jurisdictional question in *Barnae* relied on the prior statute not in force here, and whose requirements for establishing jurisdiction are materially different from those set forth in the Act. *Compare Barnae*, 1997-NMCA-077, ¶ 15, *with* § 40-10A-201, and § 40-10A-202. Thus, *Barnae*'s analyses and rationales are neither precedential or instructive to the extent that they are not viable nor consistent

12

with the Act's jurisdiction provision. And although Respondent mentioned the relevant provisions below, she makes no mention of them here, and so is deemed to have abandoned the applicability of either section on appeal.

**Superfluous Findings**

{26} Petitioner challenges several of the findings set forth in the district court's order. Petitioner argues that the district court erred in resolving factual discrepancies in favor of Respondent's version of the facts and that the district court erred in making factual findings pertaining to the merits of her parentage and child custody claim.

{27} At the December 11, 2013 hearing, the district court heard the parties' arguments with regard to jurisdiction, acknowledging that the question of jurisdiction needed to be resolved before it considered the merits of Petitioner's claim. The parties stipulated that the question of jurisdiction would be decided on the pleadings and the existing record. In its order declining jurisdiction, several findings made by the district court were immaterial to the question of jurisdiction, and some of those findings appear to go directly to the issues of parentage and child custody.

{28} Petitioner challenges the various findings entered by the district court. However, all of the challenged findings are immaterial to the question of jurisdiction. We consider the immaterial findings mere surplusage, which may be disregarded. *See*

13

*Rosen v. Lantis*, 1997-NMCA-033, ¶ 21, 123 N.M. 231, 938 P.2d 729 ("[F]indings without legal consequence may be treated as surplusage and disregarded in that action and in subsequent litigation."); *see also Tome Land & Improvement Co. v. Silva*, 1973-NMSC-120, ¶ 18, 86 N.M. 87, 519 P.2d 1024 (ignoring as surplusage an erroneous finding that was clearly immaterial and irrelevant). Accordingly, we need not address Petitioner's contention that the findings are not supported by the pleadings or the record.

**Petitioner's Requests for Visitation and Contact**

{29} In May 2013 when the petition to determine parentage and child custody was filed, Petitioner moved for interim visitation and contact with R.W. The district court did not rule on Petitioner's motion, and in August 2013 Petitioner again requested that the court address the issue of visitation. However, it appears from the record before us that while the district court addressed other issues in the case, this particular issue was not addressed. By the time the district court entered its March 2015 order, Petitioner had not had contact with R.W. for over two years.

{30} The extended time that it took for the remanded interim visitation and communication proceedings in the district court to be addressed, ultimately rendered those issues raised in connection with the petition for writ of error moot. *See Crutchfield v. N.M. Dep't of Taxation & Revenue,* 2005-NMCA-022, ¶ 36, 137 N.M.

26, 106 P.3d 1273 ("A reviewing court generally does not decide . . . moot questions."). We do note that assuming without deciding that the allegations in the petition are true, we specifically note that the procedures followed by the district court, the psychologist, and the GAL do not appear to have been in compliance with requisite procedures that would ensure a just decision.

{31}     Petitioner argues that by initially failing to rule on her requests for visitation and contact with R.W., the district court deprived her of her right to the care and custody of R.W., which implicates her fundamental liberty interests, protected by the Due Process Clauses of the federal and state constitutions. Petitioner also makes a broad assertion that the district court's decision violates equal protection. We understand Petitioner to argue that the district court's decision to decline jurisdiction in this case is a result of her status as a same-sex parent. Respondent does not address Petitioner's constitutional arguments.

{32}     Notwithstanding Petitioner's constitutional arguments and Respondent's failure to respond to those arguments, we need not address them. As we noted earlier, the district court acknowledged that the question of jurisdiction needed to be resolved before it could consider the merits of Petitioner's claims, and we agree.

{33}     Because we have concluded that the district court had jurisdiction over this action pursuant to the Act, on remand the district court will need to address whether

15

Petitioner has standing to establish parentage as an interested party under the Uniform Parentage Act (UPA). *See* NMSA 1978, §§ 40-11A-201 to -204 (2009); *Chatterjee v. King*, 2012-NMSC-019, ¶¶ 48-49, 280 P.3d 283. If Petitioner is found to have standing, it would then be appropriate for the district court to address the merits of Petitioner's petition for determination of parentage, custody, timesharing, and child support as well as Petitioner's motions for interim visitation and custody.

{34}    The district court must remain cognizant and vigilant of the requirements for appointment of a GAL on behalf of R.W., and the necessity that the GAL "provide independent services to protect the child's bests interests without being bound by the child's or either party's directive or objectives." Rule 1-053.3(C) NMRA.   In addition, the district court must also ensure that any bonding study with respect to R.W. be properly conducted with full participation of all interested parties in this case, including Petitioner and Respondent.

**CONCLUSION**

{35}    We consider the disposition of the issues in this case to require, for effective review, findings of fact and conclusions of law, as well as a thorough dispositional order. We reverse the district court's March 12, 2015 order for lack of such findings of fact and conclusions of law, and in addition for clarity on the resolution of the issues relating to jurisdiction. We discourage findings of fact stating what the parties

16

argue. What the parties argue are not facts that can support conclusions of law. *See Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)). The court is instructed to state findings of fact and conclusions of law that directly and explicitly support the grant or denial of jurisdiction over: (1) the subject matter of initial child custody under Section 40-10A-201 of the Act and any grounds to decline to exercise jurisdiction under Section 40-10A-207(a), including whether another state is a more appropriate forum; and (2) the subject matter of parentage under the UPA and any effect of that determination on issues of visitation and custody.

{36}     **IT IS SO ORDERED.**


   
**M. MONICA ZAMORA, Judge**

**WE CONCUR:**


**LINDA M. VANZI, Chief Judge**


**JONATHAN B. SUTIN, Judge**

17