Certiorari Granted, January 27, 2011, No. 32,789

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-012**

**Filing Date: December 1, 2010**

**Docket No. 29,823**

**BANI CHATTERJEE,**

**Petitioner-Appellant,**

**v.**

**TAYA KING,**

**Respondent-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Daniel A. Sanchez, District Judge**

Caren I. Friedman
Santa Fe, NM

N. Lynn Perls
Albuquerque, NM

for Appellant

Kerri L. Allensworth
Albuquerque, NM

Atkinson & Kelsey, P.A.
Patrick L. McDaniel
Albuquerque, NM

for Appellee
New Mexico Legal Group, P.C.
Julie Bishop
Albuquerque, NM

University of New Mexico School of Law

1

Antoinette Sedillo Lopez, Professor
Albuquerque, NM

for Amicus Curiae
National Center for Lesbian Rights

## OPINION

**WECHSLER, Judge.**

**{1}**     This case involves the issue of whether a non-parent has standing to assert a custody and/or visitation claim, absent a finding of unfitness of the natural or adoptive parent, under New Mexico statutory or case law.  Petitioner Bani Chatterjee appeals the district court's dismissal of her petition to establish parentage and determine custody and time sharing with regard to the adopted child of her former partner, Respondent Taya King, as well as the denial of her motion to reconsider.  We hold that NMSA 1978, Section 40-4-9.1(K) (1999) limits standing in a custody case to natural and adoptive parents and, as a result, denies Petitioner standing to bring her custody claim.  We further hold that Section 40-11-5(A) of the Uniform Parentage Act (the UPA), NMSA 1978, §§ 40-11-1 to -23 (1986, as amended through 2004) (repealed and recompiled at NMSA 1978, Sections 40-11A-101 to -903 (2009))—presuming that a father is the natural father under certain circumstances—does not apply to women and, therefore, does not establish natural parenthood in Petitioner sufficient to grant her standing.  We additionally hold, however, that the equitable power of the courts mandates a consideration of the best interests of the child.  As such, if the allegations in the petition are proven, the best interests of the child may accord Petitioner standing to assert her visitation claim.  Therefore, we affirm in part and reverse in part, and we remand to the district court to consider the allegations in the petition and the best interests of the child and to determine whether Petitioner has standing to seek visitation with the child.

## BACKGROUND

**{2}**     Petitioner and Respondent were in a committed relationship for several years when they traveled to Russia to adopt the child.  Although Petitioner accompanied Respondent to Russia, she did not adopt the child at that time or in the time since they returned.  After several years together, Petitioner and Respondent ended their relationship, and Respondent moved out with the child.  Respondent initially allowed Petitioner to visit with the child but, after time, reduced the frequency of visits and ultimately terminated them.  Shortly thereafter, Respondent moved with the child to Colorado.

**{3}**     Petitioner then filed a petition to establish parentage and determine custody and time sharing with regard to the child.  Petitioner alleged that she, Respondent, and the child had lived as a family and that, with Respondent's consent, both she and Respondent raised the child and held themselves out as parents.  Petitioner further alleged that she had provided financial and emotional support for the child, had cared for the child on a daily basis, and

2

had formed a parental relationship with the child. Respondent filed a motion to dismiss the petition, arguing that (1) pursuant to Rule 1-012(B)(6) NMRA, Petitioner is unable to state a claim for relief under the UPA because she is neither the biological nor adoptive parent of the child, and (2) pursuant to Section 40-4-9.1(K), Petitioner, as a third party seeking custody and visitation, is prohibited from gaining rights absent a showing of unfitness of the adoptive parent. The district court ruled that Section 40-4-9.1(K) does not grant standing to Petitioner because it requires a finding of unfitness and the petition alleges that both parents are fit. The court further stated that the UPA does not apply because it "read the [UPA] as applying between a child and its natural and adoptive parents only, of which the petitioner is neither." The district court therefore granted Respondent's motion to dismiss, concluding that the petition failed to state a claim upon which relief can be granted. Petitioner filed a motion to reconsider, which the district court denied.

**SUMMARY OF THE ISSUES**

**{4}**     This case deals broadly with standing. There is a difference in cases addressing standing between an action for custody and one for visitation. As this Court discussed in *Rhinehart v. Nowlin*, "it is clear that the [L]egislature did not equate custody and visitation rights." 111 N.M. 319, 324, 805 P.2d 88, 93 (Ct. App. 1990). We therefore respond to Petitioner's claims for custody and visitation separately. In order to evaluate Petitioner's standing case, we first consider statutory construction and legislative intent, and then we analyze existing New Mexico case law.

**{5}**     The central issue is the application of Section 40-4-9.1(K). Therefore, we first evaluate the plain language and legislative intent of the custody statute and the related definitions in Section 40-4-9.1(K), (L) to determine whether the Legislature has expressly limited custody actions to adoptive and natural parents, absent a finding of unfitness of the natural or adoptive parent. Within that context, we analyze Petitioner's argument that she has standing under Section 40-4-9.1(K) because of the definition of "parent" in Section 40-4-9.1(L)(5). We then analyze our Supreme Court's expansion of Section 40-4-9.1(K) to allow for standing in cases in which extraordinary circumstances are present to determine whether it applies to Petitioner.

**{6}**     We next consider Petitioner's arguments under the UPA. We first consider whether Section 40-11-5(A)(4), the "holding out" provision with regard to paternity, should be gender neutral and therefore grant Petitioner standing for her custody claim as the child's natural mother. We then evaluate Sections 40-11-7 and 40-11-21 to determine whether they are sufficient to grant Petitioner standing for custody as the child's natural mother.

**{7}**     After determining that New Mexico statutory law does not grant Petitioner standing to bring her custody claim, we discuss existing case law regarding custody for a non-parent. We address Petitioner's claim that the courts have plenary equitable power and that the best interests of the child should override any statutory limit to standing for a custody case in Section 40-4-9.1(K). We then address the effect of cases that appear to acknowledge

3

standing for a person in Petitioner's situation.

**{8}** Finally, we address Petitioner's claim for visitation and the courts' equitable powers in situations not expressly limited by the Legislature. We discuss the allegations in Petitioner's petition to determine whether the district court's consideration of the best interests of the child might warrant granting standing to Petitioner. We also address Respondent's assertion that *Troxel v. Granville*, 530 U.S. 57 (2000), limits a non-parent's claim for standing with respect to custody and visitation.

**STANDING**

**{9}** Petitioner argues that the district court erred in dismissing her petition for failure to state a claim because, "under numerous sources of law, [Petitioner] has parental standing to seek custody of, and visitation with, [the child]." "When a statute creates a cause of action and designates who may sue, the issue of standing becomes interwoven with that of subject matter jurisdiction. Standing then becomes a jurisdictional prerequisite to an action." *Am. Civil Liberties Union of N.M. v. City of Albuquerque*, 2008-NMSC-045, ¶ 9 n.1, 144 N.M. 471, 188 P.3d 1222 (internal quotation marks and citation omitted). We review de novo whether a party has standing to bring a claim. *Vescio v. Wolf*, 2009-NMCA-129, ¶ 8, 147 N.M. 374, 223 P.3d 371. We also review "[a] district court's decision to dismiss a case for failure to state a claim under Rule 1-012(B)(6) . . . de novo." *N.M. Pub. Sch. Ins. Auth. v. Arthur J. Gallagher & Co.*, 2008-NMSC-067, ¶ 11, 145 N.M. 316, 198 P.3d 342 (internal quotation marks and citation omitted). In addressing Rule 1-012(B)(6) claims, we accept as true all well-pleaded facts and resolve any doubt in favor of the complaint's sufficiency. *N.M. Pub. Sch. Ins. Auth*, 2008-NMSC-067, ¶ 11; *see also Vescio*, 2009-NMCA-129, ¶ 8 (stating the same with regard to standing). We uphold orders to dismiss for failure to state a claim only when it appears that the plaintiff cannot recover or obtain relief under any set of facts provable under the complaint. *N.M. Pub. Sch. Ins. Auth*, 2008-NMSC-067, ¶ 11.

**Section 40-4-9.1(K)**

**{10}** Section 40-4-9.1(K) states, "[w]hen any person other than a natural or adoptive parent seeks custody of a child, no such person shall be awarded custody absent a showing of unfitness of the natural or adoptive parent." When interpreting legislative intent, we first look to the plain language of a statute and give words their ordinary meaning. *Albuquerque Bernalillo County Water Util. Auth. v. N.M. Pub. Regulation Comm'n*, 2010-NMSC-013, ¶ 52, 148 N.M. 21, 229 P.3d 494. We will not read language into a statute that is not there, particularly when it makes sense as written. *Cobb v. State Canvassing Bd.*, 2006-NMSC-034, ¶ 34, 140 N.M. 77, 140 P.3d 498.

**{11}** Subsection (K) is our Legislature's codification of the oft-discussed parental preference doctrine. *See Rhinehart*, 111 N.M. at 324, 805 P.2d at 93 (stating that Sections 40-4-9.1(K), 40-4-7 to -9.1, and 40-9-1, when taken together, "reflect the [L]egislature's intent to grant trial courts wide discretion in awarding either custody or visitation based on

4

the best interests of the children, subject to [the] parental preference doctrine in custody matters" (emphasis omitted)); *see also In re Guardianship of Ashleigh R.*, 2002-NMCA-103, ¶ 14, 132 N.M. 772, 55 P.3d 984 ("New Mexico has long recognized the parental preference doctrine, which holds that in a custody contest between a parent and a non[-]parent, the parent should generally prevail unless he or she is found unfit."). The doctrine creates a presumption that the interests of minor children are best served in the custody of the natural parents and places the burden of proving the contrary onto the non-parent. *See In re Guardianship of Ashleigh R.*, 2002-NMCA-103, ¶ 14.

**{12}** The plain language of the statute is clear: "When any person other than a natural or adoptive parent seeks custody of a child, no such person shall be awarded custody absent a showing of unfitness of the natural or adoptive parent." Section 40-4-9.1(K). Giving the words their ordinary meaning, Subsection (K) explicitly states that, unless there is a showing of unfitness of the natural or adoptive parent, only a natural or adoptive parent has standing to bring a claim for custody. Under Subsection (K), therefore, a third party—one other than the natural or adoptive parent—would have standing to bring a custody claim, as long as there is a showing of unfitness of the natural or adoptive parent. The definitions section, Subsection (L), states who such a third party may be. A third type of parent could be that "person who is acting as a parent who has or shares legal custody of a child *or who claims a right to have or share legal custody*." Section 40-4-9.1(L)(5) (emphasis added). In other words, a person "who claims a right to have or share legal custody" is a parent under Subsection (L)(5) and would have standing to bring a custody claim upon a showing of unfitness of the adoptive or natural parent under Subsection (K).

**{13}** Petitioner argues that Section 40-4-9.1(K) does not bar her from seeking custody, even though there has been no finding of unfitness of the adoptive mother, Respondent. Specifically, Petitioner argues that, because Section 40-4-9.1(L)(5) defines "parent" to include a "person who is acting as a parent who has or shares legal custody of a child or who claims a right to have or share legal custody," Petitioner is a "parent" under the statute, read as a whole. This argument would have us read a third type of parent into Subsection (K)—that "parent" as defined in Subsection (L)(5) is a "person who is acting as a parent who has or shares legal custody of a child or who claims a right to have or share legal custody." However, we do not read language into a statute that is not there, *Cobb*, 2006-NMSC-034, ¶ 34, and the Legislature explicitly limited standing to natural and adoptive parents. Section 40-4-9.1(K). We are particularly hesitant to do so in this case, when the Legislature clearly contemplated other types of "parent" in Subsection (L), yet declined to include this third type of "parent" in Subsection (K).

**{14}** Moreover, whenever possible, statutes must be read as a whole and in harmony with one another. *State v. Smith*, 2004-NMSC-032, ¶ 10, 136 N.M. 372, 98 P.3d 1022. As stated above, Section 40-4-9.1(K) would allow a person "who claims a right to have or share legal custody"—a "parent" under Subsection (L)—to have standing to bring a custody claim upon a showing of unfitness of the adoptive or natural parent. We cannot read the statute any other way without adding words that the Legislature did not see fit to add or rendering

5

portions of Section 40-4-9.1 meaningless. *See Int'l Ass'n of Firefighters v. City of Carlsbad*, 2009-NMCA-097, ¶ 11, 147 N.M. 6, 216 P.3d 256 ("We seek to give meaning to all parts of the statute, such that no portion is rendered surplusage or meaningless."), *cert. denied*, 2009-NMCERT-007, 147 N.M. 363, 223 P.3d 360.

**{15}** Indeed, if we were to read Subsection (L) as Petitioner requests, granting a non-adoptive or non-natural parent standing to bring a custody claim, we would be rendering meaningless the Legislature's limitation of standing to adoptive and natural parents. *See* § 40-4-9.1(K). We reiterate that the Legislature knows how to include language in a statute if it so desires. *Cf. State v. Katrina G.*, 2007-NMCA-048, ¶ 17, 141 N.M. 501, 157 P.3d 66 (stating that, if the Legislature had wanted to draft a children's code statute with the same expiration of jurisdiction as seen in the adult code, it could have done so). Instead, the Legislature chose to limit Subsection (K) to natural and adoptive parents, and we decline to expand the statute beyond that limitation. *Cf. Rhinehart*, 111 N.M. at 325, 805 P.2d at 94 (stating that in a custody dispute between a natural father and a step-mother that the court's discretion in custody cases is limited by Subsection (K) in that there must be a showing of unfitness in the natural or adoptive parent "[b]efore the court can award *any person* other than a natural or adoptive parent custody of the children").

**{16}** Respondent argued at oral argument before this Court that the dissolution of marriage statutes, NMSA 1978, §§ 40-4-1 to -20 (1901, as amended through 2008), do not apply to this case because there was no marriage or dissolution thereof. We do not read Section 40-4-9.1 to apply only to proceedings between a husband and a wife. Although Chapter 40, Article 4 of the 1978 compilation of the New Mexico statutes is entitled "Dissolution of Marriage," the Legislature did not limit the application of the entire chapter to proceedings between present or former married parties. First, the title assigned by the Compilation Commission does not limit the reach of a statute. *See* NMSA 1978, § 12-2A-13 (1997) ("Headings and titles may not be used in construing a statute or rule unless they are contained in the enrolled and engrossed bill or rule as adopted."). Section 40-4-9.1 was originally adopted in 1981. As enrolled and engrossed, the bill stated that it was "relating to custody of minors; providing for joint custody under certain circumstances." 1981 N.M. Laws, ch. 112. The bill amending Section 40-4-9.1 in 1986 stated that the bill was "relating to child custody; providing for [the] rights, obligations and procedures in joint custody determinations; repealing and enacting a section of the NMSA 1978." 1986 N.M. Laws, ch. 41.

**{17}** Moreover, the express language of portions of Chapter 40, Article 4 specifically contemplates proceedings between parties who are not and who have never been married. For instance, Section 40-4-9(A) applies to "any case in which a judgment or decree will be entered awarding the custody of a minor." Section 40-4-11 applies to "any proceeding before a court in which the court has the duty or authority to determine liability of a parent for the support of minor children or the amount of that support." Section 40-4-11.1(A) applies to "any action to establish or modify child support." Each of these sections addresses the rights and obligations of "parents," not "spouses," regarding custody of their minor

6

children and child support. *See also* NMSA 1978, § 40-4B-10 (1988) (requiring Child Support Hearing Officers to apply child support guidelines, as established by statute (Section 40-4-11.1), the Supreme Court, or the Secretary of Human Services). In contrast, other portions of Chapter 40, Article 4 expressly state that the section only applies to proceedings between a husband and wife. *See, e.g.*, § 40-4-5 (defining the jurisdiction of a district court "to decree a dissolution of marriage").

**{18}** Section 40-4-9.1 similarly concerns the rights of parents to custody of their child. It defines the forms of custody and states the presumption for joint custody as being in the best interests of a child. Section 40-4-9.1(A), (L). It specifically defines a "parent" subject to its provisions as "a natural parent, adoptive parent or person who acting as a parent who has or shares legal custody of a child or who claims a right to have or share legal custody." Section 40-4-9.1(L)(5). It makes no mention of the need for an existing or prior spousal relationship for its application.

**{19}** Our reading is supported by appellate decisions that have applied portions of Chapter 40, Article 4 to proceedings not involving a dissolution of marriage. For example, in *In re Adoption of J.J.B.*, 119 N.M. at 652, 894 P.2d at 1008, our Supreme Court considered the "public policy" of New Mexico in custody matters as stated in Section 40-4-9.1(K) in discussing the custody rights to a child in an adoption proceeding between a natural parent and an adoptive parent that did not involve the dissolution of marriage. In *Grant v. Cumiford*, 2005-NMCA-058, ¶¶ 2, 13, 137 N.M. 485, 112 P.3d 1142, this Court applied the "presumption that joint custody is in the best interests of the child" found in Section 40-4-9.1(A) in a case involving parents who were "never married." We also applied various provisions of the statutory child support guidelines on "Imputation of Income" and "Abatement" of child support found in Section 40-4-11.1. *Grant*, 2005-NMCA-058, ¶¶ 22-32.

**{20}** There is one case that can be read inconsistently. In *Vescio*, 2009-NMCA-129, ¶ 12, this Court mentioned Section 40-4-9.1(K) in connection with an aunt's custody petition. Relying on *In re Guardianship Petition of Lupe C.*, 112 N.M. 116, 119, 812 P.2d 365, 368 (Ct. App. 1991), we stated that the section "authorizing the court to make an order for the guardianship of a child . . . only applies in the context of marital dissolution." *Vescio*, 2009-NMCA-129, ¶ 12. *In re Guardianship Petition of Lupe C.* involved Section 40-4-7(B) and (C), not Section 40-4-9.1. 112 N.M. at 119, 812 P.2d at 368. Section 40-4-7(B) and (C) only apply to dissolution of marriage cases. To the extent that *Vescio* can be read to limit the application of Section 40-4-9.1 to cases involving marital dissolution, we hold that it should not be so interpreted. *See Grant,* 2005-NMCA-058, ¶¶ 2, 13 (noting that the presumption of Section 40-4-9.1(A) that joint custody is in the best interests of the child applied in a case in which parents were never married); *cf. Normand ex rel. Normand v. Ray*, 109 N.M. 403, 406-08, 785 P.2d 743, 746-48 (1990) (addressing Section 40-4-9(B) and (C) in a case involving a child custody dispute between the father and maternal grandparents in which there was no dissolution of marriage before the court).

**{21}** Regardless, the argument that Section 40-4-9.1 does not apply if there is no marriage or dissolution of marriage before the court does not address the parental preference doctrine that underlies Section 40-4-9.1. Even if Section 40-4-9.1 were not to apply to custody issues between non-spouses, the parental preference doctrine would nevertheless apply. *See In re Guardianship Petition of Ashleigh R.*, 2002-NMCA-103, ¶ 14 (stating application of parental preference doctrine in custody contest between parent and non-parent).

**{22}** Finally with respect to our analysis of Section 40-4-9.1(K), we note that the dissent observes that legislatures in other states have enacted statutes that specifically deal with the factual circumstances similar to this case and that our Legislature has not done so. Indeed, the New Mexico Legislature has not enacted such a statute. However, it is because the Legislature has not acted to grant Petitioner standing to seek custody that we reach our conclusion. Section 40-4-9.1 addresses standing of non-parents to seek custody of a child and limits it to circumstances in which there is a showing of parental unfitness. It is the Legislature's responsibility to expand the requirements for standing if it wishes to do so.

**Expansion of Section 40-4-9.1(K)—Extraordinary Circumstances**

**{23}** Our Supreme Court has recognized an expansion of the express language of Section 40-4-9.1(K) to allow for allegations of "extraordinary circumstances." *In re Adoption of J.J.B.*, 119 N.M. 638, 652, 894 P.2d 994, 1008 (1995) (stating that, despite the public policy in New Mexico as demonstrated by Section 40-4-9.1(K), when "[c]ustody based upon the biological parent-child relationship [is] at odds with the best interests of the child[,] the best interests of the child must prevail" and that "[a] parent's right is not absolute and under extraordinary circumstances, custody of a child may be awarded to a non[-]parent over the objections of a parent"). Petitioner argues in her reply brief, and made the assertion at oral argument, that extraordinary circumstances exist in this case. However, she made no such argument before the district court or in her brief in chief. *See* Rule 12-216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked, but formal exceptions are not required, nor is it necessary to file a motion for a new trial to preserve questions for review."); *State v. Foster*, 1999-NMSC-007, ¶ 41, 126 N.M. 646, 974 P.2d 140 (stating that "issues not addressed in an appellant's brief will be deemed abandoned"), *abrogated on other grounds as recognized by Kersey v. Hatch*, 2010-NMSC-020, 148 N.M. 381, 237 P.3d 683.

**{24}** Nonetheless, even if we were to accept Petitioner's assertion that she "implicitly" argued extraordinary circumstances in her petition by stating that psychological harm would come to the child if Petitioner was not permitted to have a continuing relationship with the child, we are not persuaded that Petitioner's allegation of psychological harm rises to the level of extraordinary circumstances contemplated by our Supreme Court in *In re Adoption of J.J.B.*. Indeed, the Court in that case stated that "special facts and circumstances might be found that would provide an extraordinary reason for taking a child from its parent" and that these special circumstances seem to "be the anticipation of unique situations that are beyond the usual unfit-parent criteria and are not expressly covered by statute or case law." 119

8

N.M. at 652, 894 P.2d at 1008 (internal quotation marks and citation omitted). Although the Court declined to enumerate specific facts and circumstances, the examples that it gave indicate that extraordinary circumstances are instances in which there have been no formal allegations of unfitness, but in which "the natural parent's circumstances have so significantly changed as to render the parent unfit" or "the child's contact with the biological parents has been so minimal that he or she has significantly bonded with [other] parents." *Id.* at 652-53, 894 P.2d at 1008-09 (citing also to a New York case that indicates that an extraordinary circumstance could exist if removal of the child from the custody of a non-parent "is grave enough to threaten destruction of the child," even if there has been no formal charge of abandonment or persisting neglect by the parent (internal quotation marks and citation omitted)). *See also In re Guardianship of Ashleigh R*., 2002-NMCA-103, ¶ 24 ("A lengthy separation between parent and child can be an exceptional circumstance justifying the denial of custody to an otherwise fit parent."). The Court further stated that acknowledging an extraordinary circumstance amounts to an "involuntary disruption of the bond between parent and child" and that it is "met only with great difficulty, for evident reasons of humanity and policy." *Id.* at 653, 894 P.2d at 1009 (internal quotation marks and citation omitted). Petitioner has not asserted that the relationship between Respondent and the child is so weak as to amount to unfitness, that there would be "destruction of the child" if Petitioner is not granted custody, or that there should be any disruption of the parent and child relationship between Respondent and the child. We therefore decline to further address Petitioner's extraordinary circumstances argument.

**The UPA**

**{25}**    Petitioner raises another argument under the UPA, arguing that the UPA presumes her to be the child's parent, entitling her to standing to bring her custody claim. Petitioner relies upon Sections 40-11-5(A)(4) and 40-11-21 and asserts that the Legislature intended the "holding out provision" pertaining to paternity, Section 40-11-5(A)(4), to apply equally to women. We apply the 2008 version of the UPA because that is the statute that was in effect at the time of the proceedings below.

**{26}**    Section 40-11-5(A)(4) states that "[a] man is presumed to be the natural father of a child if . . . while the child is under the age of majority, he openly holds out the child as his natural child and has established a personal, financial or custodial relationship with the child." Section 40-11-21 states, in pertinent part, "[i]nsofar as practicable, the provisions of the [UPA] applicable to the father and child relationship apply" to a mother and child relationship. Petitioner would have us read these statutes together to accord her standing because her allegations assert that she held out the child as her own and, as such, should be "presumed to be the natural [mother] of [the] child." Section 40-11-5(A).

**{27}**    Section 40-11-4 of the UPA states that the "parent and child relationship" can be established by (1) the natural mother by proof of her having given birth or as provided by Section 40-11-21, (2) the natural father as provided by the UPA, and (3) an adoptive parent under the Adoption Act. As stated above, whenever possible, statutes must be read as a

9

whole and in harmony with one another. *See Smith*, 2004-NMSC-032, ¶ 10. Moreover, we look first to the plain language of a statute and give words their ordinary meaning. *Albuquerque Bernalillo County Water Util. Auth.*, 2010-NMSC-013, ¶ 52. Section 40-11-4 expressly provides for the methods by which a woman can assert her status as the natural mother—by proof of her having given birth or by some other proof of being a natural mother, as provided by Section 40-11-21. The methods by which a man can assert his status as a natural father are provided in Section 40-11-5. If we were to read Section 40-11-5 to apply to women, pursuant to Section 40-11-21, we would be rendering the portion of Section 40-11-4 ascribing the methods by which a woman may assert her status as a natural mother surplusage. *See Int'l Ass'n of Firefighters*, 2009-NMCA-097, ¶ 11 ("We seek to give meaning to all parts of the statute, such that no portion is rendered surplusage or meaningless."). Therefore, we decline to read Section 40-11-5(A)(4) in this impracticable way. *See* § 40-11-21 (stating that "[i]nsofar as practicable, the provisions of the [UPA] applicable to the father and child relationship apply" to a mother and child relationship).

**{28}** Petitioner further argues that Sections 40-11-7 and 40-11-21 allow her, as an "interested party," to bring an action to determine the existence of a mother and child or a parent and child relationship. Section 40-11-7 is titled "[d]etermination of father and child relationship; who may bring action; when action may be brought." Although the statute states that any interested party may bring an action to determine the existence of a parent and child relationship, Section 40-11-21 addresses the mother and child relationship, so we may fairly assume that Section 40-11-7 addresses the father and child relationship, as stated in its title. *See State v. Lewis*, 2008-NMCA-070, ¶ 19, 144 N.M. 156, 184 P.3d 1050 (indicating that the title of a statute may be used to determine legislative intent); *see also* § 12-2A-13 (stating that titles may be used in construing a statute if they are contained in the enrolled or engrossed bill). As to Section 40-11-21, to read the statutes harmoniously, we must limit Section 40-11-21 to its use, as referenced by Section 40-11-4. If we were to expand Section 40-11-21 to allow an interested party to assert the existence of a mother and child relationship with a woman who is not the biological or adoptive mother, we would be rendering Section 40-11-4 meaningless insofar as it establishes the parent and child relationship as used in the UPA as relating to a natural mother, natural father, or adoptive mother. *See Int'l Ass'n of Firefighters*, 2009-NMCA-097, ¶ 11 (stating that we do not read statutes to render portions of it meaningless); *see also* § 40-11-2 (defining the "parent and child relationship" as used in the UPA as "the legal relationship existing between a child and his *natural or adoptive parents* [and] includes the mother and child relationship and the father and child relationship" (emphasis added)).

**{29}** Additionally, as stated above, Section 40-11-4 states that a parent and child relationship can be established between a child and a natural mother by proof of the mother having given birth to the child or by some other proof of natural motherhood, as provided for in Section 40-11-21, which allows an interested party to assert the existence of such a relationship. Section 40-11-4 does not, however, allow for a parent and child relationship between a child and a natural mother to be established by proof of some other kind of parent and child relationship—in other words, nothing in the statute indicates that the Legislature

10

contemplated a parent and child relationship being established between a natural mother and a child with regard to anyone other than a natural mother. *See Black's Law Dictionary* 1127 (9th ed. 2009) (referring to "birth mother" or "biological mother" under the definition of "natural mother"); *id.* at 1106 (defining "birth mother" within the definition of "mother" as "[t]he woman who carries an embryo during the gestational period and who delivers the child" and allowing for instances of artificial insemination, and defining "biological mother" as "[t]he woman who provides the egg that develops into an embryo"). We will not read additional meaning into a statute that is not there, particularly when it makes sense as written. *See Cobb*, 2006-NMSC-034, ¶ 34. Petitioner does not claim that she has given birth to or legally adopted the child. Therefore, she has not established standing under Section 40-11-21 by which she may establish a parent and child relationship as that relationship is used in the UPA.

**Equity and Common Law**

**{30}** We next address Petitioner's arguments that New Mexico case law gives her standing based on *A.C. v. C.B.*, 113 N.M. 581, 829 P.2d 660 (Ct. App. 1992), and *Barnae v. Barnae*, 1997-NMCA-077, 123 N.M. 583, 943 P.2d 1036, and that Subsection (K) "does not take into account the reality of psychological parentage and certainly does not trump the courts' plenary equitable powers." Petitioner alleges that she is "the equitable parent" of the child and that her parental right should be recognized under an equitable parent or de facto parent theory to maintain the stability of her parent-child relationship with the child. We first discuss *A.C.* and *Barnae*, which, although informative, are not entirely analogous to the issue before us.

**{31}** *A.C.* involved an oral agreement between a biological mother and her partner, the petitioner, entered before the birth of the mother's child, to raise the child as co-parents. 113 N.M. at 582, 829 P.2d at 661. The petitioner claimed that she participated in the rearing of the child, including sharing in the financial responsibility, for several years. *Id.* After the parties separated, the petitioner filed an action, seeking joint legal custody and time sharing. *Id.* *A.C.* dealt primarily with the petitioner's allegations that the biological mother committed fraud, inducing the petitioner to dismiss the petition. However, this Court briefly addressed the district court's finding that "no valid legal marriage existed between the parties, there was no adoption of the child by [the p]etitioner, and thus, [the p]etitioner had no standing or enforceable rights." *Id.* at 583, 829 P.2d at 662. We declined to "issue an advisory opinion, particularly without the benefit of the district court's findings of fact and conclusions of law," but stated that someone "in [the p]etitioner's shoes may be able to establish deprivation of a legally recognized right to maintain some type of continuing relationship with the child." *Id.* at 586, 829 P.2d at 665. We therefore stated that the petitioner had "made a colorable claim of standing to seek enforcement of such claimed rights." *Id.* However, *A.C.* did not consider Section 40-4-9.1. *See State v. Gamlen*, 2009-NMCA-073, ¶ 15, 146 N.M. 668, 213 P.3d 818 ("It is well established that cases are not authority for propositions not considered." (internal quotation marks and citation omitted)). We decline to rely on a statement based on a hypothetical situation, which did not consider

11

the relevant statute in our case, to override the Legislature's stated public policy. *See Coppler & Mannick, P.C. v. Wakeland*, 2005-NMSC-022, ¶ 8, 138 N.M. 108, 117 P.3d 914 (stating that "[t]he general equitable power of the district court cannot overcome the public policy established by the Legislature").

**{32}** Similarly, *Barnae* addressed a dispute between a biological mother and her partner, the petitioner. 1997-NMCA-077, ¶ 2. Again, in that case, the petitioner did not legally adopt the children, and, after the parties ended their relationship, the petitioner filed a petition for custody and time sharing. *Id.* ¶¶ 2, 6. The primary issue was whether New Mexico or California had jurisdiction, but, in dealing with the jurisdiction question, we stated our view of New Mexico case law on the question of whether the petitioner had standing to state a claim. *Id.* ¶ 10. Citing *A.C.*, we reiterated that "a person in a situation similar to [the p]etitioner's made a colorable claim of standing to assert a legal right to some type of continuing relationship with a child." *Barnae*, 1997-NMCA-077, ¶ 10. We observed that, "[e]ven though the standard factors used to determine forum non conveniens . . . weigh in California's favor, that analysis is obviated by the fact that the California courts would dismiss this case if New Mexico were to relinquish jurisdiction," noting that California courts do not grant standing to individuals in the petitioner's position. *Id.* ¶ 21. However, again, this Court did not consider Section 40-4-9.1 in *Barnae*, and we will not rely on *Barnae* for a proposition overriding the Legislature's explicitly stated limitation in Section 40-4-9.1. *See Coppler & Mannick, P.C.*, 2005-NMSC-022, ¶ 8 ("The general equitable power of the district court cannot overcome the public policy established by the Legislature[.]"); *Gamlen*, 2009-NMCA-073, ¶ 15 ("[C]ases are not authority for propositions not considered." (internal quotation marks and citation omitted)).

**{33}** Nor do the plenary equitable powers of the courts provide standing in this case. The district court exercises comprehensive equitable powers when dealing with cases involving children. *Sanders v. Rosenberg*, 1997-NMSC-002, ¶ 10, 122 N.M. 692, 930 P.2d 1144 (filed 1996). However, these equitable powers are not without limitation. *See id.* "It is a basic maxim that equity is ancillary, not antagonistic, to the law." *Coppler & Mannick, P.C.*, 2005-NMSC-022, ¶ 8 (internal quotation marks and citation omitted). The equitable powers of the courts cannot overcome the Legislature's established public policy, and courts may not act in equity when doing so would violate an express provision of a statute. *Id.*; *see also State ex rel. Miera v. Chavez*, 70 N.M. 289, 291, 373 P.2d 533, 534 (1962) ("The courts will not add to such a statutory enactment, by judicial decision, words which were omitted by the [L]egislature."). The Legislature has acted and has enacted in Section 40-4-9.1(K) the standards for standing to seek custody of a child. The Legislature's action does not leave room for us to invoke the courts' inherent equitable authority to alter the legislative standards. Indeed, the courts' inherent equitable powers are "usually exercised when there is no other parent or individual to act for the child." *In re Guardianship Petition of Lupe C.*, 112 N.M. at 119, 812 P.2d at 368. Absent a finding of unfitness of the adoptive or natural parent as required by Section 40-4-9.1(K), a non-parent does not have standing for a custody claim because the equitable powers of the courts do not trump the public policy established by the Legislature in Section 40-4-9.1(K). *Coppler & Mannick, P.C.*, 2005-NMSC-022, ¶

12

8.

**Visitation and the Best Interests of the Child**

**{34}** Petitioner's arguments for visitation were included with her arguments as to custody. The Legislature has not limited standing for visitation in the same way that it has with custody in Section 40-4-9.1(K). Indeed, as expressed in *Rhinehart* with regard to step-parent visitation, the requirement that a non-parent show unfitness of a natural or adoptive parent before the court can consider the non-parent for custody "is not relevant to a determination of visitation." 111 N.M. at 325, 805 P.2d at 94 (citing Section 40-9-1 with regard to grandparent visitation). In *Rhinehart*, this Court relied on the courts' equitable powers and declined to accept the "father's argument that the [L]egislature's failure to permit statutorily the granting of visitation rights to stepparents necessarily prohibited the trial court from exercising jurisdiction for that purpose in [that] appeal." *Id.*; *see also Sims v. Sims*, 1996-NMSC-078, ¶ 29, 122 N.M. 618, 930 P.2d 153 (stating that "the presumption is that the [L]egislature, in enacting statutes, does not intend to overturn long-established equitable powers beyond what it declares with irresistible clearness by either express declaration or necessary implication" and clarifying that a statute that does not expressly limit a body of law will not be construed as restricting the courts' equitable powers (internal quotation marks and citation omitted)). As stated above, the courts have "wide discretion in awarding . . . visitation based on the best interests of the children." *Rhinehart*, 111 N.M. at 324, 805 P.2d at 93.

**{35}** When reviewing a Rule 1-012(B)(6) dismissal, we accept well-pleaded facts as true. *N.M. Pub. Sch. Ins. Auth.*, 2008-NMSC-067, ¶ 11. Although many of the facts and conclusions in the petition are disputed, doubts should be resolved in favor of the sufficiency of the complaint. *Id.* The petition alleges that (1) Respondent adopted the child when she was thirteen months old; (2) Petitioner did not adopt the child through the Russian agency due to prejudice in Russia toward same-sex parents and race; (3) the parties raised the child together, sharing physical custody of the child for over nine years, have "fully participated in parenting her," and "have held and continue to hold themselves out as parents of the child"; (4) the parties are "fit and proper parents"; (5) Petitioner has provided for the "physical, emotional, and social needs of the child"; and (6) "Petitioner and the . . . child mutually acknowledge a relationship as parent and child." These facts, if proven, assert a colorable claim for standing for visitation, and the district court erred in relying on Section 40-4-9.1(K) to deny Petitioner standing for visitation. We express no opinion as to whether the court should grant standing to Petitioner or whether the disputes should be resolved in favor of Petitioner if standing is granted. We merely hold that the district court is not restricted by Section 40-4-9.1(K) in considering visitation and, instead, can and should use its equitable powers to consider the facts stated in the petition and determine whether Petitioner should be granted standing for her visitation claim. *See Rhinehart*, 111 N.M. at 325, 805 P.2d at 94 (stating that courts have "inherent powers to act in the best interests of the children" and that the "best interests are the paramount consideration for the court in custody cases").

13

**{36}** Respondent argues that, in *Troxel*, the United States Supreme Court established that, "[a]bsent allegations that [Respondent] is unfit, state interference with her decisions regarding the care, custody and control of her child is unconstitutional and in derogation of the rights of [Respondent]." 530 U.S. at 70. We are not persuaded that *Troxel* limits standing for visitation as broadly as Respondent desires. In *Troxel*, the Court did state that the Due Process Clause of the Fourteenth Amendment to the United States Constitution "protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Id.* at 66. However, the Court was careful to hold that the statute at issue in that case, Wash. Rev. Code. § 26.10.160(3) (2004), unconstitutionally infringed on the fundamental right "*as applied to [the respondent] in [that] case*." *Troxel*, 530 U.S. at 67 (emphasis added). Indeed, although the Court reiterated that "there is a presumption that fit parents act in the best interests of their children," *id.* at 68, it declined to "consider the primary constitutional question passed on by the Washington Supreme Court—whether the Due Process Clause requires all non[-]parental visitation statutes to include a showing of harm or potential harm to the child as a condition precedent to granting visitation." *Id.* at 73. Instead, the United States Supreme Court held that the application of the statute to the respondent and her family violated her due process right because the Washington Superior Court's reasons for awarding visitation to the petitioner demonstrated that it "failed to accord the determination of [the respondent], a fit custodial parent, any material weight" and, instead, involved "nothing more than a simple disagreement between the Washington Superior Court and [the respondent] concerning her children's best interests." *Id.* at 72, 75. In other words, *Troxel* does not stand for the proposition that a non-parent could never be awarded visitation absent a finding of unfitness of the custodial parent. Rather, as it expressly stated, it merely held that the statute, as applied to the respondent in that case, violated the respondent's due process rights. *Id.* at 75.

**{37}** In the present case, we do not see a similar violation of Respondent's due process rights. *Cf. Deem v. Lobato*, 2004-NMCA-102, ¶¶ 17, 21, 136 N.M. 266, 96 P.3d 1186 (declining to strike down New Mexico's Grandparent's Visitation Act as facially unconstitutional in light of *Troxel* and stating that "[t]here is nothing in *Troxel* or the resulting case law to suggest that the Supreme Court considered the presumption that a fit parent acts in the best interests of his or her child to be other than a rebuttable presumption"); *see also Williams v. Williams*, 2002-NMCA-074, ¶ 23, 132 N.M. 445, 50 P.3d 194 (stating that "*Troxel* may have altered, but it did not eradicate, the kind of balancing process that normally occurs in visitation decisions"). *Rhinehart*, and even *A.C.* and *Barnae*, do not indicate a sweeping allowance for visitation rights awarded to a non-parent based solely on a district court's opinion of the best interests of the child, regardless of a custodial parent's own determination. Instead, those cases and our holding today merely allow a non-parent who has established a prima facie case for a parent and child relationship to assert a claim for visitation. *See Rhinehart*, 111 N.M. at 325, 805 P.2d at 94 (stating that the district court should use its discretion to grant visitation rights to a non-parent when "visitation is in the best interests and welfare of the children"); *see also Barnae*, 1997-NMCA-077, ¶ 10 (stating that "a person in a situation similar to [the p]etitioner's made a colorable claim of standing to assert a legal right to some type of continuing relationship

14

with a child"); *A.C.*, 113 N.M. at 586, 829 P.2d at 665 (stating that someone "in [the p]etitioner's shoes may be able to establish deprivation of a legally recognized right to maintain some type of continuing relationship with the child").

**{38}** It is still for the district court to determine whether Petitioner's assertions are to be believed and, if so, whether they are sufficient to warrant court-ordered visitation. *Cf. In re Adoption of Francisco A.*, 116 N.M. 708, 713, 866 P.2d 1175, 1180 (Ct. App. 1993) (stating that "it may be in the child's best interest to allow visitation by a step[-]parent who had not adopted the child following divorce from the child's natural parent" and that "our [S]upreme [C]ourt has held that the district court sitting as a court of equity has inherent power concerning issues of custody of minors" (internal quotation marks and citation omitted)); *see also In re Samantha D.*, 106 N.M. 184, 186, 740 P.2d 1168, 1170 (Ct. App. 1987) (stating that parents do not have absolute rights in their children and that, instead, parental rights are secondary to the best interests and welfare of the children). However, the district court erred in dismissing Petitioner's complaint for failure to state a claim on the grounds that Section 40-4-9.1(K) denied her standing for visitation.

**ATTORNEY FEES**

**{39}** Petitioner argues in her reply brief that she is entitled to reasonable attorney fees if she prevails. She makes this argument in response to a statement made in Respondent's closing argument in her answer brief that she has been "forced . . . to engage in expensive and protracted litigation." Rule 12-213(C) NMRA states that the reply brief "shall reply only to arguments or authorities presented in the answer brief." Respondent's complaint that she has invested a significant amount of time and energy in this litigation is not an argument sufficient to allow Petitioner to raise an argument for attorney fees for the first time in her reply brief. *See id.*

**CONCLUSION**

**{40}** For the reasons stated in this opinion, we affirm in part and reverse in part and remand to the district court to determine whether Petitioner has standing for visitation based upon the best interests of the child.

**{41}   IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**I CONCUR:**

_____
**CELIA FOY CASTILLO, Judge**

15

**MICHAEL E. VIGIL, Judge (Dissenting)**

**VIGIL, Judge (dissenting).**

**{42}**    The majority holds that the UPA does not apply to this case, and I agree.  The majority also holds that Petitioner has standing to seek visitation with the child, and I again agree.  However, the majority holds that Petitioner has no standing to seek a declaration of parenthood or legal custody of the child.  I cannot agree with this conclusion because this may result in the permanent severance of a parent-child bond.  Without standing, Petitioner has no right to prove the allegations of the petition that, indeed, a parent-child bond has formed between her and the child she helped raise from infancy for nine years.

**{43}**    The child is helpless with the most to lose in this case:  a loving, nurturing parent.  Petitioner asks for her day in court where she can seek to have her rights and duties as a parent of the child confirmed.  In concluding Petitioner has no standing to be heard, the majority negates years of jurisprudence which recognizes the realities of a parent-child relationship, and the child's interest in *her* right to a parent.

**STANDARD OF REVIEW**

**{44}**    I emphasize that the case is before us following a district court dismissal for failure to state a claim upon which relief can be granted pursuant to Rule 1-012(B)(6).  "In reviewing the district court's decision to dismiss for failure to state a claim, we accept as true all well-pleaded factual allegations in the complaint and resolve all doubts in favor of the complaint's sufficiency.  A Rule 12(B)(6) motion is *only* proper when it appears that [the] plaintiff can neither recover nor obtain relief under any state of facts provable under the claim."  *N.M. Pub. Sch. Ins. Auth.*, 2008-NMSC-067, ¶ 11 (internal quotation marks and citation omitted).

**FACTUAL ALLEGATIONS**

**{45}**    The allegations contained in the petition are under oath.  Petitioner desires to have the rights afforded to a parent, and she is willing to take the responsibility of supporting the child.  Petitioner states that the parties were in a committed domestic relationship for fifteen years, from August 1993, until August 2008.  During their domestic relationship, Petitioner and Respondent both went to Russia to adopt the child.  However, Petitioner did not legally adopt the child because Respondent told her "that there would be prejudice on the part of the Russian adoption agencies both because of same sex parents and racial prejudice."  Thus, Respondent adopted the child.  The adoption took place in March 2000, when the child was thirteen months old.

**{46}**    Petitioner further alleges that "[s]ince the adoption of the child and until the parties' separation, both parties have raised the child and have fully participated in parenting her.  Both parties have held and continue to hold themselves out as parents of the child."

Petitioner adds that she has provided for the physical, emotional, and social needs of the child; that since the adoption of the child to the present, Petitioner performed a substantial share of the care taking functions for the minor child and assumed a parental role by tending to the child's physical, emotional, and social needs on a day-to-day basis; that as a result, a parent-child bond was formed between Petitioner and the child; and that Petitioner and the child mutually acknowledge a parent and child relationship.

**{47}** Petitioner adds that Petitioner's relationship with the child began with the consent of the Respondent; that Petitioner has shared physical custody of the child for an extended period of nine years; that Respondent cooperated in the development of the parent-child relationship between Petitioner and the child; that Respondent held Petitioner out as the child's parent, and consented to and accepted Petitioner holding herself out as such; and that Respondent assured Petitioner, through direct communications as well as through her conduct, that Petitioner would remain the child's parent.

**{48}** Petitioner contends Respondent is "estopped from denying Petitioner's status as the child's parent," and Petitioner "is the equitable parent of the minor child, and as such is entitled to relief, including but not limited to the affirmation of Petitioner's parental rights by virtue of equitable estoppel." Petitioner asserts, "[i]t is in the best interests of the child that the Petitioner's rights as a parent be affirmed under the equitable parent or de facto parent theory, and that the established security and stability of the parent-child relationship between the child and the Petitioner be maintained." Accordingly, Petitioner asks the district court to order that she "be declared a legal parent of the minor child"; that "both parties be ordered to contribute to the support of the minor child"; that "the court determine custody and timesharing"; and that the court grant other additional relief, consistent with the foregoing.

**{49}** In my opinion, we must reverse the district court order of dismissal for three reasons. First, Section 40-4-9.1(K) does not apply to the factual scenario presented to us in this case. Secondly, even if Section 40-4-9.1(K) applies, the facts set forth in the petition constitute "extraordinary circumstances" under existing case law to take the case out of the purview of Section 40-4-9.1(K). Thirdly, accepting the allegations of the petition as true, New Mexico common law grants Petitioner standing in this case. I discuss each of these points below.

## SECTION 40-4-9.1(K) DOES NOT APPLY

**{50}** The majority opinion relies almost exclusively on Section 40-4-9.1(K) to conclude that Petitioner has no standing to bring her custody claim, even though Petitioner places no reliance on this statute whatsoever in seeking to affirm the district court. Waiver rules aside, because the district court relied on this statute in dismissing the petition, and because the majority opinion relies so heavily on the statute, I also address this statute.

17

**{51}**   When the Legislature enacted this statute, it did not have the factual scenario before us in mind.  Instead, the Legislature clearly and unambiguously expressed its intent that the statute only applies within the context of a dissolution of marriage between a husband and wife or a proceeding for the disposition of children between a husband and wife without a dissolution of marriage.  I therefore conclude that Section 40-4-9.1(K) does not apply to the facts before us in this case.

**{52}**   Sections 40-4-1 to -20 are codified by the Compilation Commission in Chapter 40, Article 4.  Article 4 is entitled "Dissolution of Marriage."  The original statutes were codified in Chapter 22, Article 7 of the 1953 Compilation, and Article 7 was entitled "Divorce and Separation."  Chapter 319, Sections 1-14 of New Mexico Laws of 1973, repealing and amending Sections 22-7-1 to -22 of the 1953 Compilation.  When the 1978 Compilation came into effect, these statutes were placed under Chapter 40, Article 4, which is entitled "Dissolution of Marriage."  Thus, since 1973, with the passage of Chapter 319, Sections 1-14 of New Mexico Laws of 1973, and subsequent amendments, all of the statutes in Chapter 40, Article 4 fall under "Dissolution of Marriage."  Section 1 (Section 40-4-1) states the grounds upon which a dissolution of marriage may be decreed; Section 2 (Section 40-4-2) defines incompatibility as a basis for granting a dissolution of marriage; and Section 3 (Section 40-4-3) provides that when the "husband and wife" have permanently separated and no longer live together as "husband and wife," then "either may institute proceedings in the district court for a division of property, *disposition of children* or alimony, without asking for or obtaining in the proceedings, a dissolution of marriage."  (Emphasis added.)  Section 4 (40-4-4) then provides for venue in "[a]ny proceeding for the dissolution of marriage, division of property, *disposition of children* or alimony, as provided for in this chapter[.]"  (Emphasis added.)  The remaining provisions in Article 4, "Dissolution of Marriage" all expressly relate to proceedings between a husband and wife, their children, and their property.  *See* Sections 40-4-5 to -9; 40-4-10 to -20.

**{53}**   In 1981, within the foregoing context, the Legislature enacted "A new Section 40-4-9.1 NMSA 1978[.]"  Chapter 12, Section 1, New Mexico Laws of 1981.  With this statute, the Legislature for the first time expressed its preference that in a dissolution of marriage case or a proceeding between a husband and wife for a "*disposition of children*" without a dissolution of marriage as provided in Section 40-4-3, joint custody is preferred.  Importantly, the Legislature specifically directed that this new statute be placed with the statutes dealing with "Dissolution of Marriage" under Chapter 40, Article 4.

**{54}**   The present version of Section 40-4-9.1 was originally enacted by Chapter 41, Section 1 of New Mexico Laws of 1986.  Section 1 of the Session Laws directs, "Section 40-4-9.1 NMSA 1978 (being Laws 1981, Chapter 112, Section 1) is repealed and *a new Section 40-4-9.1 NMSA 1978 is enacted to read*[.] "  (Emphasis added.)  Thus, in 1986, the Legislature reiterated the direction it gave in 1981 that this joint custody statute be placed with the statutes dealing with "Dissolution of Marriage" under Chapter 40, Article 4.

**{55}** The overall structure of Section 40-4-9.1 also demonstrates that it relates to children of a husband and wife in the context of a dissolution of marriage case or a proceeding between a husband and wife for the disposition of children without a dissolution of marriage. I now refer to the specific subsections of Section 40-4-9.1. Subsection B addresses factors which are to be considered in determining whether to award a joint custody and it specifically refers to the parents of the children. It does so by reference to "each parent" and "both parents." The remaining Subsections (C) through (J) follow the same pattern in referring to parents and their children and how to make a determination of joint custody. Within this context, Subsection (K) refers to "any person other than a natural or adoptive parent" who seeks custody. This subsection harmonizes with the remaining subsections and statutes in that it addresses when a person other than a parent of the children seeks custody of a child within the context of a dissolution of marriage case or a proceeding for "disposition of children" without a dissolution of marriage. To read Subsection (K) as proposed in the majority opinion makes Subsection (K) apply to a circumstance which the Legislature did not envision, did not address, and did not provide for. The 1999 amendment to Section 40-4-9.1 does not alter this conclusion.

**{56}** Again, the Legislature specifically directed that its preference for joint custody as set forth in Section 40-4-9.1 applies to the disposition of children in a dissolution of marriage action between a husband and wife or a proceeding between a husband and wife for the disposition of their children without a dissolution of marriage. The Legislature specifically directed that this statute be placed in Article 4 which addresses "Dissolution of Marriage." The case before us is clearly not a dissolution of marriage case or a case between a husband and wife for disposition of children without a dissolution of marriage.

**{57}** Cases from other states indicate that when legislatures have considered circumstances such as those before us in this case, they have responded. *See In re E.L.M.C.*, 100 P.3d 546, 555-56 (Colo. App. 2004) (applying a statute granting standing to seek parental decision-making responsibilities to a person other than a parent who had been in physical care of the child for six months or more to a same sex partner where the other partner adopted a six-month-old child under China law, and both partners parented the child during their seven-year relationship); *SooHoo v. Johnson*, 731 N.W.2d 815, 818, 824 (Minn. 2007) (applying a statute granting standing to seek visitation to a person with whom a child has resided for at least two years to the same sex partner of an adoptive mother who adopted children from China who had co-parented the children with the same sex partner); *Kulstad v. Maniaci*, 2009 MT 326, ¶ 28, 220 P.3d 595 (applying a statute granting standing to seek a parenting interest where a person has established a parent-child relationship with a child to the same sex partner of an adoptive mother); *Mason v. Dwinnell*, 660 S.E.2d 58, 65 (N.C. Ct. App. 2008) (applying a statute granting standing to a non-parent to seek custody of a child where a parent-child relationship has developed to a same sex couple). Our own Legislature has not yet addressed the factual scenario of this case.

## EXTRAORDINARY CIRCUMSTANCES

**{58}** Even if Section 40-4-9.1(K) somehow applies, the petition sets forth sufficient "extraordinary circumstances" to qualify as an exception to 40-4-9.1(K). *See In re Adoption of J.J.B.*, 119 N.M. at 652, 894 P.2d at 1008 (stating that notwithstanding Section 40-4-9.1(K), under extraordinary circumstances, custody may be awarded to a non-parent over the objections of a parent).

**{59}** In *J.J.B.*, the child was placed in the custody of prospective adoptive parents on January 4, 1991. *Id.* at 641, 894 P.2d at 997. When the adoption was finalized in August 1992, the child had been with the prospective adoptive parents for eighteen months. *Id.* at 643, 894 P.2d at 999. During this time, the child's natural father and the adoptive parents were engaged in a custody dispute. *Id.* Our Supreme Court concluded that the district court erred in terminating the natural father's parental rights, and the adoption was therefore void. *Id.* at 650-51, 894 P.2d at 1006-07. However, this did not mean that the father automatically regained custody of the child. "Custody based upon the biological parent-child relationship may be at odds with the best interests of the child. When that happens, the best interests of the child must prevail." *Id.* at 652, 894 P.2d at 1008. Our Supreme Court concluded that extraordinary circumstances were present to allow an award of custody of the child to the adoptive parents. *Id.* at 652-54, 894 P.2d at 1008-10. Petitioner's status in this case, who alleges she formed a parent-child bond with the child over a period of nine years is at least as strong as the adoptive parents in *J.J.B.* Since the adoptive parents in *J.J.B.* had standing to seek custody, Petitioner in this case likewise has standing.

**{60}** In *In re Guardianship of Ashleigh R.*, 2002-NMCA-103, ¶ 15, we expressly cited to *J.J.B.* as recognizing the presence of psychological parents as an extraordinary circumstance. For the reasons stated in the next section of this dissent, the petition alleges that the elements of a psychological parent exist. Other courts agree that the existence of a psychological parent-child relationship constitutes exceptional circumstances. *See V.C. v. M.J.B.*, 748 A.2d 539, 549-50 (N.J. 2000) (concluding that former same sex partner who is a psychological parent of a child has standing to seek custody based on "exceptional circumstances"); *Clifford K. v. Paul S.*, 619 S.E.2d 138, 157 (W. Va. 2005) (concluding former same sex partner who was psychological parent had standing to intervene in custody proceeding under "exceptional cases" provision of statute).

**{61}** I do not agree that Section 40-4-9.1(K) applies to the facts before us in this case. However, even if it could somehow be construed as applying, I would conclude that "extraordinary circumstances" are present in this case. Since the majority disagrees, I dissent.

**NEW MEXICO COMMON LAW**

**{62}** There being no statute which addresses standing in this case, I now look to the common law to determine whether Petitioner has standing in this case.

20

**{63}** I begin with Judge A. Joseph Alarid's analysis in *In re Guardianship of Victoria R.*, 2009-NMCA-007, ¶¶ 14-15, 145 N.M. 500, 201 P.3d 169, wherein he discusses substantial and persuasive authority supporting the concept of a psychological parent. After the analysis, Judge Alarid notes, "older New Mexico cases also support recognition of psychological parentage." *Id.* ¶ 15. The cases referred to are *Cook v. Brownlee*, 54 N.M. 227, 230, 220 P.2d 378, 379 (1950) (upholding decision of the trial court finding that the best interests of the child would be served by allowing the teenaged child to remain in the custody of the maternal grandfather following the death of mother rather than returning the child to the father with whom the child was barely acquainted); and *Ex parte Pra*, 34 N.M. 587, 588, 286 P. 828, 829 (1930) (upholding dismissal of the biological mother's habeas petition seeking custody of her nine-year-old son following the death of the child's maternal aunt; noting the evidence that mother had voluntarily delivered the child as an infant to the aunt and uncle, that the aunt and uncle had cared for the child "as if he were their own son," and that the uncle and the child "have become greatly attached to and love each other as father and child").

**{64}** Moreover, more recent New Mexico cases support Petitioner's position. I conclude that *A.C.* is sufficiently on point. This case also involved a committed domestic relationship between two women, one of whom was the biological mother of the child. The two women lived together for approximately fourteen years before separating. 113 N.M. at 582, 829 P.2d at 661. Seven years prior to the separation, the parties entered into an oral agreement to raise a child as co-parents and the biological mother gave birth to the child who was conceived through artificial insemination. *Id.* The partner (who was not the biological mother) alleged that after the birth she shared the responsibility of caring for the child; participated in setting up a trust fund for the child's education, as well as a savings account and life insurance policy for the child's benefit; and that she shared the financial responsibility for raising the child. *Id.* The partner filed an action seeking joint legal custody and time sharing. *Id.*

**{65}** The district court entered an order dismissing the partner's petition with prejudice after the parties entered into a settlement agreement which provided for dismissal of the action with prejudice. *Id.* Five months after the dismissal, the partner filed a verified petition to set aside or reopen the case under Rule 1-060(B)(3) NMRA. *A.C.*, 113 N.M. at 582, 829 P.2d at 661. The basis alleged for reopening the case was that the biological mother refused to reduce the agreement to writing. *Id.* at 583, 829 P.2d at 662. The biological mother responded to the motion to reopen the judgment by moving for summary judgment on grounds that she was fit as a parent and that no legal relationship existed between the child and the partner that would confer upon the partner any rights, privileges, duties, or obligation. *Id.* The partner responded to the motion for summary judgment asserting that material issues of fact existed about whether the agreements between the parties had been made and whether she was a de facto parent. *Id.* The district court granted the biological mother's motion for summary judgment. *Id.* The district court found there was no valid legal marriage between the parties and that because the partner had not adopted the child, she had no standing or enforceable rights. *Id.*

21

**{66}**     On appeal, we stated, "[a] determination of [the partner's] rights depends on her first, establishing a basis for setting aside the order of dismissal and, assuming she is successful in doing so, second, establishing a basis for either shared custody or visitation." *Id.* We held that the partner "made a prima facie showing which, if proved, would justify setting aside the dismissal and authorize consideration of her right to continue her relationship with the child." *Id.* We first held that if the district court found that an agreement was made and found fraud, misrepresentation, or other conduct on the part of the biological mother, which induced the partner to agree to the dismissal, the district court should then proceed to consider what rights, if any, would be conferred on the partner by reason of any agreements made or actions taken. *Id.* at 584, 829 P.2d at 663. We discussed authorities addressing the rights of non-traditional parents and related significant issues. After considering those authorities, we concluded, "One in [the partner's] shoes may be able to establish deprivation of a legally recognized right to maintain some type of continuing relationship with the child." *Id.* at 586, 829 P.2d at 665. Accordingly, we specifically held, "[t]he [partner] has made a colorable claim of standing to seek enforcement of such claimed rights." *Id.*

**{67}**     In *Barnae*, two women lived in California for ten years in a committed relationship during which they both contributed to the upbringing of two children. 1997-NMCA-077, ¶ 1. The partner never legally adopted, or sought to adopt, the children. Nevertheless all four lived together in the same house, excluding brief separations until the partner permanently left the biological mother's household. *Id.* ¶ 2. After concluding the action could properly be maintained in New Mexico, *id.* ¶ 8, we noted *A.C.* and said, "New Mexico . . . has held that a person in a situation similar to [the partner] made a colorable claim of standing to assert a legal right to some type of continuing relationship with a child." *Barnae*, 1997-NMCA-077, ¶ 10.

**{68}**     Thus, in my opinion, *A.C.* and *Barnae* grant Petitioner standing in this case. I therefore also disagree with the analysis of these cases by the majority. Majority Opinion ¶¶ 30-32. The issue before us is not whether Petitioner will prevail on the merits, but whether the assertions she makes in the petition are sufficient to confer standing. I believe they are.

**{69}**     The majority does not address what Petitioner must prove to be entitled to relief. In discussing a psychological parenthood relationship, Judge Alarid in *In re Guardianship of Victoria R.*, 2009-NMCA-007, ¶ 14 n.6, refers to the four-part test enunciated in *In re E.L.M.C.*, 100 P.3d at 560:

> (1) the legal parent consented to and fostered the nonparent's formation and establishment of a parent-like relationship between the nonparent and the child; (2) the nonparent and the child lived together in the same household; (3) the nonparent assumed obligations of parenthood by taking significant responsibility for the child's care, education and development, including contributing towards the child's support, without expectation of financial

compensation, and (4) the nonparent has established a parental role sufficient to create with the child a bonded, dependent relationship parental in nature.

Other courts have adopted this test. *See V.C.*, 748 A.2d at 554 (concluding that once a third party has been determined to be a psychological parent to a child, she stands in legal parity with the legal parent for custody and visitation issues); *Rubano v. DiCenzo*, 759 A.2d 959, 974 (R.I. 2000) (concluding same sex partner of biological mother had standing to establish a psychological parenthood relationship with the child and thereby enforce the parties' visitation agreement); *In re Custody of H.S.H.-K*, 533 N.W.2d 419, 420, 435-36 (Wis. 1995) (remanding to the trial court for a determination of whether same sex partner of biological mother could prove elements of a psychological parent, and thus obtain visitation); *see also* The American Law Institute, *Principles of the Law of Family Dissolution*, § 2.03 (2000) (recognizing and adopting standards for proving a "parent by estoppel" and a "de facto parent").

**{70}** I would adopt the *In re E.L.M.C.* test as set forth above. This test preserves the child's relationship with an adult who has functioned as a parent, thereby serving the child's best interests; it protects the constitutional rights of legal parents because a psychological relationship can only be fostered with their consent and assistance; and it strictly limits who can qualify as a psychological parent.

**{71}** The majority opinion recognizes that the district court exercises comprehensive equitable powers when dealing with cases involving children. Majority Opinion ¶ 33. *Sanders v. Rosenberg*, 1997-NMSC-002, ¶ 10, 122 N.M. 692, 930 P.2d 1144. This exercise of comprehensive, plenary equitable power, under the foregoing authorities, grants Petitioner standing to seek to the relief she seeks in her verified petition. Other courts have come to this conclusion under circumstances similar to those in this case. *See C.E.W. v. D.E.W.*, 2004 ME 43, ¶¶ 2, 10, 845 A.2d 1146 (concluding that as a corollary of a court's equitable jurisdiction to determine a child's best interests, same sex partner of biological mother had standing to be considered for an award of parental rights and responsibilities as a de facto parent); *T.B. v. L.R.M.*, 786 A.2d 913, 917 (Pa. 2001) (concluding that where a same sex partner assumed a parental status and assumed parental duties with the biological mother's consent, the child's best interests require that the third party be granted standing to litigate whether that relationship should be maintained); *In re Parentage of L.B.*, 122 P.3d 161, 163 (Wash. 2005) (en banc) (concluding that same sex partner of biological mother who alleged she was a de facto parent had standing to petition for rights and responsibilities of shared parentage under equitable power of the court). Since the majority disagrees, I dissent.

**CONCLUSION**

**{72}** I conclude that Petitioner should be granted her day in court to prove whether she and the child have bonded as parent and child, and whether it is in the best interests of the child for Petitioner to be granted custody. Since the majority disagrees, I dissent.

**Topic Index for *Chatterjee v. King*, Docket No. 29,823**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **CD** | **CHILDREN** |
| CD-CS | Custody |
| CD-UP | Uniform Parentage Act |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-SD | Standing |
| | |
| **DR** | **DOMESTIC RELATIONS** |
| DR-AD | Adoption |
| DR-CD | Child Custody |
| DR-CS | Child Custody Jurisdiction |
| DR-VR | Visitation Rights |
| | |
| **JD** | **JURISDICTION** |
| JD-SM | Subject Matter |
| | |
| **ST** | **STATUTES** |
| ST-CN | Constitutionality |
| ST-IP | Interpretation |
| ST-LI | Legislative Intent |